No. 20-20005
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT
_____

IN THE MATTER OF: ABC DENTISTRY, P.A., ET AL.,

Debtors
_____

DR. SAEED ROHI

Appellant

V.

J. MARK BREWER; A. BLAIRE HICKMAN; BREWER & PRITCHARD, P.C.

Appellees
_____

On Appeal from the United States District Court,
Southern District of Texas, Houston Division
No. 19-cv-00682
_____

## CORRECTED BRIEF FOR APPELLANT
_____

Kevin Dubose
ALEXANDER DUBOSE & JEFFERSON LLP
1844 Harvard St.
Houston, Texas 77008
Phone (713) 523-2358

Lance Christopher Kassab
THE KASSAB LAW FIRM
1214 Elgin Street
Houston, Texas 77004
Phone (713) 522-7400

*Counsel for Appellant Dr. Saeed Rohi*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for Appellant Dr. Saeed Rohi certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **Appellant (Plaintiff)** | **Appellees (Defendants)** |
|---|---|
| Dr. Saeed Rohi | Brewer & Pritchard, PC<br>J. Mark Brewer<br>A. Blaire Hickman |

| **Counsel for Appellant** | **Counsel for Appellees** |
|---|---|
| Kevin Dubose<br>ALEXANDER DUBOSE<br>  & JEFFERSON LLP<br>1844 Harvard Street<br>Houston, Texas 77008<br>Telephone (713) 523-0667<br>*Appellate Counsel* | Ben A. Baring, Jr.<br>DE LANGE, HUDSPETH,<br>  MCCONNELL & TIBBETS, LLP<br>1177 West Loop South, Suite 1700<br>Houston, Texas 77027<br>Telephone (713) 871-2000<br>*Appellate Counsel* |
| Lance Christopher Kassab<br>David Eric Kassab<br>THE KASSAB LAW FIRM<br>1214 Elgin Street<br>Houston, Texas 77004<br>Telephone (713) 522-7400<br>*Trial and Appellate Counsel* | J.Mark Brewer<br>A. Blaire Hickman<br>BREWER & PRITCHARD, PC<br>800 Bering, Suite 201<br>Houston, Texas 77057<br>Telephone (713) 209-2910<br>*Trial Counsel for Brewer & Pritchard, PC* |

**Counsel for Appellees (continued)**

Kenneth A. Zimmern
ZIMMERN LAW FIRM, P.C.
8588 Katy Freeway, Suite 226
Houston, Texas 77024
Telephone (713) 529-4999
*Trial Counsel for J. Mark Brewer*

Sean Ryan Buckley
SEAN BUCKLEY & ASSOCIATES, PLLC
770 S. Post Oak Ln., Suite 620
Houston, Texas 77056
Telephone (713) 380-1220
*Trial Counsel for A. Blaire Hickman*

/s/ Lance Christopher Kassab
*Counsel forAppellant*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Dr. Saeed Rohi respectfully requests oral argument. This appeal involves whether the district court erred when it concluded that the bankruptcy court had subject matter jurisdiction over state law claims for breach of contract, breach of fiduciary duty, and deceptive trade practices, and affirmed the bankruptcy court's denial of Appellant's motion to remand. It also involves whether the district court erred when it affirmed the bankruptcy court's 12(b)(6) dismissal and concluded that Appellant's state law claims for breach of contract, breach of fiduciary duty and deceptive trade practices were barred by res judicata. Oral discussion of the facts and the aplicable precedent would benefit the Court.

# TABLE OF CONTENTS

Certificate of Interested Persons ............................................................... I

Statement Regarding Oral Argument ..................................................... III

Table of Contents .................................................................................. IV

Table of Authorities ............................................................................. VI

Jurisdictional Statement ......................................................................... 1

Issues Presented For Review .................................................................. 2

Statement of the Case ............................................................................. 3

    I.   Statement of facts. ..................................................................... 3

    II.  Statement of the nature of proceedings. ................................... 7

Summary of Argument ........................................................................... 9

Argument ............................................................................................... 12

    I.   The district court erred when it concluded that the bankruptcy court had jurisdiction over these purely state law claims . ................... 12

        A.  Standard of review for jurisdiction is de novo ............................ 12

        B.  The petition (complaint) did not establish jurisdiction ............... 12

        C.  The November Order and confirmed plan cannot provide an independent basis for jurisdiction ................................................. 13

        D.  *Travelers* is factually and legally distinguishable ........................ 16

    II.  The district court erred by concluding that the bankruptcy court did not abuse its discretion when it declined to abstain and remand ..... 20

        A.  Standard of review for non-abstention is abuse of discretion ...... 21

        B.  Mandatory abstention was required because all elements were satisfied ................................................................................... 21

        C.  Permissive abstention was required ............................................. 24

1.  When considering the 14 permissive abstention factors, 11 favor abstention and 3 are neutral ................... 25

2.  Special weight should have been given to factors that were not considered by the bankruptcy court ................... 32

3.  Because 11 of the 14 factors favored abstention, the lower courts abused their discretion when they retained jurisdiction .......................................................... 33

III. The district court erred by affirming the bankruptcy court's dismissal based on res judicata ............................................... 33

A.  Standard of review for granting a 12(b)(6) motion is de novo .......................................................................... 34

B.  All elements of res judicata were not satisfied ........................... 34

1.  The parties to the suits are not in privity ........................... 34

2.  There is no prior judgment from a court of competent jurisdiction ........................................................ 38

3.  There is no prior final judgment on the merits ................. 41

4.  Not the same causes of action ........................................... 45

C.  Even if all elements of res judicata are satisfied, the doctrine does not apply because these claims could not have been brought in the prior proceeding ........................................... 49

IV. The bankruptcy court abused its discretion when it denied leave to amend the complaint, and the district court erred when it affirmed ...... 55

Conclusion and Prayer ........................................................................... 57

Certificate of Service ............................................................................ 59

Certificate of Compliance ..................................................................... 60

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

Aetna Health Inc. v. Davila,
    542 U.S. 200 (2004) ........................................................... 12

Am. Home Assurance Co. v. Chevron, USA, Inc.,
    400 F.3d 265 (5th Cir. 2005) ............................................ 47

Augustson v. Linea Aerea Nacional-Chile S.A.,
    76 F.3d 658 (5th Cir. 1996) .............................................. 43

Balestri v. Hunton & Williams, LLP
(In re Hallwood Energy),
    2012 Bankr. LEXIS 6066 (Bankr. N.D. Tex. Feb. 8, 2012) ............... 22, 26

Bass v. Denney
(In re Bass),
    171 F.3d 1016 (5th Cir. 1999) .......................................... 14

Bogard v. Cook,
    586 F.2d 399 (5th Cir. 1978) ............................................ 45

Browning v. Navarro,
    887 F.2d 553 (5th Cir. 1990) ............................................ 40

Cluett v. Medical Protective Co.,
    829 S.W.2d 822 (Tex. App. – Dallas 1992, writ denied) ............... 35, 38

Compania Financiara Libano, S.A. v. Simmons,
    53 S.W.3d 365 (Tex. 2001) .............................................. 56

Dore v. Kleppe,
    522 F.2d 1369 (5th Cir. 1975) .......................................... 45

Dow Chem. Co. v. Benton,
    357 S.W.2d 565 (1962) ................................................... 37

Edge Petroleum Operating Co., Inc. v. GPR Holdings, L.L.C.
(In re TXNB Internal Case),
    483 F.3d 292 (5th Cir. 2007) ............................................... 21, 23

EEOC v. Jefferson Dental Clinics, PA,
    478 F.3d 690 (5th Cir. 2007) ............................................... 35

El Paso Nat. Gas Co. v. Am. Petrofina Co.,
    733 S.W.2d 541
    (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) ............ 40

Emp'rs Cas. Co. v. Block,
    744 S.W.2d 940 (Tex. 1988) ............................... 35, 36, 38, 43

Genesis Producing Co., L.P. v. Smith Big Oil Corp.,
    2014 U.S. Dist. LEXIS 109370 (S.D. Tex. Aug. 8, 2014) ............ 31

Getty Oil Co. v. Ins. Co. of N. Am.,
    845 S.W.2d 794 (Tex. 1992) ............................................... 35, 38

Glasstex, Inc. v. Arch Aluminum & Glass Co., Inc.
(In re Polvado),
    2006 Bankr. LEXIS 5059 (Bankr. S.D. Tex. 2006) ............... 13

Grant v. Askanase,
    2010 U.S. Dist. LEXIS 100918 (S.D. Tex. Sep. 24, 2010) ........ 19, 20

Halbert v. City of Sherman,
    33 F.3d 526 (5th Cir. 1994) ............................................... 55

Hanna v. Compass Bank
(In re Hanna),
    2018 Bankr. LEXIS 3974 (Bankr. S.D. Tex. Dec. 13, 2018) ....... 30, 31

Hernandez v. Lara,
    2006 Tex. App. LEXIS 6656
    (Tex. App. – Corpus Christi, July 27, 2006, no pet.) ............ 36, 47, 56

Hous. Baseball Partners LLC v. Comcast Corp.
(In re Hous. Reg'l Sports Network, L.P.),
  514 B.R. 211 (Bankr. S.D. Tex. 2014) ................................................. 28, 29

In re Howe,
  913 F.2d 1138 (5th Cir. 1990) .............................................. 50, 51, 57

In re Superior Air Parts, Inc.,
  516 B.R. 85 (Bankr. N.D. Tex. 2014) ................................................ 19, 23

Indem. Ins. Co. v. McGee,
  356 S.W.2d 666 (1962) ............................................................ 37

J.T. Thorpe Co. v. Am. Motorists,
  2003 U.S. Dist. LEXIS 26016 (S.D. Tex. June 6, 2003) ................... 23, 30

Jackson v. Johns-Manville Sales Corp.,
  727 F.2d 506 (5th Cir. 1984) ..................................................... 54

Keck v. Nat'l Union Fire Ins. Co.,
  20 S.W.3d 692 (Tex. 2000) ....................................................... 44

Marino v. State Farm Fire & Cas. Ins. Co.,
  787 S.W.2d 948 (Tex. 1990) ...................................................... 44

Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.,
  195 F.3d 765 (5th Cir. 1999) ..................................................... 55

McVey v. Johnson
(In re SBMC Healthcare, LLC),
  519 B.R. 172 (Bankr. S.D. Tex. 2014) ............... 22, 25, 26, 27, 29, 30, 32, 33

Nat'l Benevolent Ass'n of the Christian Church v. Weil, Gotshal & Manges, LLP
(In re Nat'l Benevolent Ass'n of the Christian Church),
  333 F. App'x 822 (5th Cir. 2009) ................................................ 49

Newby v. Enron Corp.
(In re Enron Corporation Securities),
  535 F.3d 325 (5th Cir. 2008) ..................................................... 12

Osherow v. Ernst & Young, LLP
(In re Intelogic Trace, Inc.),
        200 F.3d 382 (5th Cir. 2000) ............................................ 45, 46, 49, 53

Pam Capital Funding LP v. Nat'l Gypsum Co.
(In re Kevco Inc.),
        113 F. App'x 29 (5th Cir. 2004) ........................................ 13

Penthouse Media Grp., Inc. v. Pachulski Stang Ziehl & Jones LLP,
        406 B.R. 453 (S.D.N.Y. 2009) ........................................... 51, 54

Personette v. Kennedy
(In re Midgard Corp.),
        204 B.R. 764 (10th Cir. 1997) ........................................... 24

Petro. Prods. & Servs. v. McClinton Energy Grp., LLC
(In re Petro.  Prods. & Servs.),
        561 B.R. 662 (Bankr. S.D. Tex. 2016) ............................. 22

Postal Mut. Indem. Co. v. Ellis,
        169 S.W.2d 482 (1943) ...................................................... 37, 38

Querner v. Rindfuss,
        966 S.W.2d 661 (Tex. App. – San Antonio 1998, pet. denied) ......... 48

Regal Row Fina, Inc. v. Wash. Mut. Bank, FA,
        2004 U.S. Dist. LEXIS 26704 (N.D. Tex. Dec. 9, 2004) ......... 24

Sanchez v. Ameriquest Mortg. Co. (In re Sanchez),
        372 B.R. 289 (Bankr. S.D. Tex. 2007) ............................. 51

Schmidt v. Rodriguez
(In re Rodriguez),
        524 B.R. 111 (Bankr. S.D. Tex. 2014) ............................. 35, 36

Segner v. Admiral Ins. Co.
(In re Palmaz Sci., Inc.),
        2018 Bankr. LEXIS 270 (Bankr. W.D. Tex. Jan. 31, 2018) ......... 14

Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.,
    851 F.3d 530 (5th Cir. 2017) ................................................................. 13

Spera v. Fleming, Hovenkamp & Grayson, P.C.,
    25 S.W.3d 863 (Tex. App. – Houston [14th Dist.] 2000, no pet.) ......... 28, 48

State Farm Lloyds v. C.M.W.,
    53 S.W.3d 877 (Tex. App.—Dallas 2001, pet. denied) ......................... 35, 38

Stokes v. Gann,
    498 F.3d 483 (5th Cir. 2007) ................................................................. 34

Stripling v. Jordan Prod. Co.,
    234 F.3d 863 (5th Cir. 2000) ................................................................. 55, 56, 57

Swindle v. State Farm Mut. Auto. Ins. Co.,
    533 S.W.3d 665 (Ark. Ct. App., 2017) ................................................. 35

Test Masters Educ. Servs. v. Singh,
    428 F.3d 559 (5th Cir. 2005) ................................................................. 34

Travelers Indemnity v. Bailey,
    557 U.S. 137 (2009) ............................................................................... 16, 17, 18, 23

Turturici v. Nat'l Mortg. Servicing LP,
    2010 U.S. Dist. LEXIS 91796 (E.D. Cal. Aug. 11, 2010) ................... 33

Vinson & Elkins v. Moran,
    946 S.W.2d 381 (Tex. App. – Houston [14th Dist.] 2001, no pet.) ....... 43

Wiley v. Southland Sys.
(In re Southland Sys.),
    2007 Bankr. LEXIS 3381 (Bankr. S.D. Tex. Sep. 21, 2007) ............... 32

Wood v. Wood
(In re Wood),
    825 F.2d 90 (5th Cir. 1987) ................................................................... 21, 22, 24

WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp.,
    75 F. Supp. 2d 596 (S.D. Tex. 1999) .................................................... 24

**Rules**

Federal Rule of Appellate Procedure

Rule 32 .................................................................................... 58

Federal Rule of Civil Procedure

Rule 15(a) ................................................................................ 55

Texas Disciplinary Rule of Professional Conduct

Rule 1.06(b) ...................................................................... 28, 43

Rule 1.06(c) ............................................................................. 43

Rule 1.08(g) ............................................................................. 44

**Statutes**

28 United States Code

§ 157(e) ................................................................................... 31

§ 330 ....................................................................................... 46

§ 1291 ....................................................................................... 1

§ 1334(b) ................................................................................. 12

Texas Human Resource Code

§ 36.110(c) ..................................................................... 39, 42, 43

**Other**

46 Am. Jur. Judgments

§ 532 ....................................................................................... 47

50 C.J.S. Judgments

§ 1099 ..................................................................................... 35

## JURISDICTIONAL STATEMENT

Appellant, Dr. Saeed Rohi[1], disputes the bankruptcy court's jurisdiction over him and his state law claims against his former attorneys. The bankruptcy court denied his motion to remand, and instead dismissed Rohi's claims based on res judicata. ROA.20-20005.10-30; RE Tabs 3 and 4. Rohi appealed to the district court, which affirmed the bankruptcy court's decision. ROA.20-20005.1817-1869; RE Tabs 4, 6 and 7. Appellant filed a notice of appeal. ROA.20-20005.1891-1893; RE Tab 8. This Court has jurisdiction over the appeal under 28 U.S.C. §1291.

---

[1] Appellant was improperly identified in the court below as Saeed Rohifard.

## ISSUES PRESENTED FOR REVIEW

(1)    Whether the district court erred when it concluded that the bankruptcy court had subject matter jurisdiction over state law claims for breach of contract, breach of fiduciary duty, and deceptive trade practices, and affirmed the bankruptcy court's denial of Rohi's motion to remand.

(2)    Whether the district court erred when it affirmed the bankruptcy court's 12(b)(6) dismissal and concluded that Rohi's state law claims for breach of contract, breach of fiduciary duty and deceptive trade practices were barred by res judicata.

(3)    Whether the district court abused its discretion when it affirmed the bankruptcy court's denial of Rohi's motion for leave to amend his complaint to clarify his state law allegations in a way that would have defeated the res judicata defense, to the extent Rohi's initial pleading allegations were insufficient.

# STATEMENT OF THE CASE

## I.    Statement of facts.

Appellant, Dr. Saeed Rohi, hired Appellees Brewer & Pritchard, PC, J. Mark Brewer and A. Blaire Hickman (collectively, "B&P") to prosecute a qui tam claim against ABC Dental and others who committed Medicaid fraud under the Texas False Claims Act, in addition to breach of contract (the "underlying case"). ROA.20-20005.1818. Rohi entered into a contingency fee contract with Brewer, on behalf of the firm. ROA.20-20005.340-342, 1818. The contract provided that Brewer & Pritchard would "be paid a fee" that was "contingent on the recovery of money or property" from the underlying defendants. ROA.20-20005.340, 1818. The fee was either 40% or 45% of "any and all sums of money … received from any party," depending on whether the case went to trial. ROA.20-20005.340. The contract contained an arbitration clause that was enforceable in Texas state court. ROA.20-20005.341.

After ABC Dental filed a chapter 11 bankruptcy petition, Rohi's suit against the underlying defendants was removed to bankruptcy court as an adversary proceeding. ROA.20-20005.1819. The bankruptcy court ordered the parties to mediation. ROA.20-20005.1819. This resulted in an agreement between Rohi and the underlying defendants, memorialized in an "Amended Term Sheet" in which the underlying defendants agreed they were "jointly and severally liable to Rohi in

the aggregate amount of $3.5 million." ROA.20-20005.219. However, the State of Texas must consent to any settlement in a qui tam claim, and the State refused consent. ROA.20-20005.1820. Brewer notified Rohi of the State's refusal and requested permission to ask the bankruptcy court to resolve the dispute. ROA.20-20005.347. Brewer proposed that Rohi reduce his recovery by $350,000, stating "[this] would leave you a gross recovery of $3,150,000 payable over the next 5+ years." ROA.20-20005.347.

The bankruptcy court ordered the parties to a separate mediation and compelled the State's attendance. ROA.20-20005.1820. The mediation resulted in a $4 million settlement offer that also involved the State. ROA.20-20005.1820. Brewer forwarded a settlement proposal to Rohi and requested his "authorization to agree to th[e] terms" of the settlement. ROA.20-20005.350. The preliminary terms indicated that the $4 million in settlement proceeds would be "payable to Dr. Rohi as attorney fees, retaliation damages and a relator's share, and the amount of the settlement proceeds payable to the State if any." ROA.20-20005.353. The final terms indicated that the bankruptcy court would "determine the amount of the $4 million settlement payable to Dr. Rohi and the amount of the settlement proceeds payable to the State." ROA.20-20005.350. Based on the Lawyers' written and verbal representations, Rohi understood that any attorney fee allocation would be

made part of the "gross recovery" to be divided in accordance with the terms of the agreement. *See* ROA.20-20005.62-63.

Despite lengthy negotiations, Rohi and the State could not reach an agreement concerning the proper allocation of the settlement proceeds. ROA.20-20005.12. In briefing filed with the bankruptcy court on behalf of Rohi, B&P proposed a division and requested "reasonable attorney fees" to be paid to Rohi as the complainant. ROA.20-20005.152. The State objected and claimed that the payment of Rohi's attorney's fees would violate the statutory caps. ROA.20-20005.12. B&P responded, arguing that "Dr. Rohi is expressly entitled to recover his … reasonable attorney's fees …" ROA.20-20005.178.

At a hearing in November 2017, the bankruptcy court proposed a division of the $4 million settlement to resolve the dispute between Rohi and the State. ROA.20-20005.12, 106-143.   No dispute between Rohi and his lawyers was resolved because no dispute existed; to the contrary, Rohi was represented by at the hearing by Brewer, and he argued on Rohi's behalf. ROA.20-20005.107-108, 1821.

During this hearing, the bankruptcy court proposed dividing the settlement based on a 45% contingency fee. ROA.20-20005.116-121. Counsel for the State (not Rohi) objected to this allocation, arguing that the 45% figure applied only if the case was "called to trial" and "that event never occurred here." ROA.20-

20005.125. The bankruptcy court agreed, readjusted the figures, and allocated: "1,599,000 to the State, 720 for Dr. Rohi, and 1,681,000 to the attorneys." ROA.20-20005.127. The bankruptcy court questioned the parties whether they were opposed, at which point Long requested "ten minutes to consult with the client" but indicated that "given 10 minutes' time with the client, we will accept it." ROA.20-20005.121, 127, 1821.

During the recess, Brewer and Long persuaded Rohi to accept the allocation and Rohi did so based upon representations that the attorney fee allocation would be placed into the "gross recovery" which would be divided in accordance with the terms of the contingency fee agreement. *See* ROA.20-20005.61, 332-333. Long announced to the bankruptcy court that Rohi would "not argue against" the division, and the State took the same position. ROA.20-20005.139-140, 1822. Accordingly, the bankruptcy court approved this allocation on the record, stating "$1,681,000 will be allocated to the attorneys to be divided in accordance with their private agreements." ROA.20-20005.140. The bankruptcy court entered a docket entry reflecting this ruling, dated November 7, 2017. ROA.20-20005.104. This judgment will be referred to as the "November Order." RE Tab 9.

With the adversary proceeding resolved, ABC Dental confirmed its plan of reorganization on December 13, 2017, and began making settlement payments into the registry of the bankruptcy court. ROA.20-20005.113-114.

## II.    Statement of the nature and stage proceedings.

The allocation "led to a dispute" between Rohi and B&P regarding the division of the gross recovery. ROA.20-20005.114, 1823. The gross recovery to Rohi and his lawyers was $2,401,000. ROA.20-20005.140-141, 1823. B&P had promised Rohi that, regardless of whether this gross recovery included the attorney fee allocation, they would share it in accordance with the percentages identified in the contingency fee agreement. ROA.20-20005.332-333. Therefore, B&P should have received 40% of this gross recovery, or $960,400. ROA.20-20005.340. However, well after the November Order, B&P breached their fiduciary duties to Rohi and reneged on their promises by excluding the attorney fee allocation from the gross recovery. ROA.20-20005.14, 61.

The "dispute between the parties grew until" Rohi filed suit against B&P in June 2018 in Texas state court alleging state-law claims of breach of contract, breach of fiduciary duty, violations of the Texas Deceptive Trade Practice Act ("DTPA"), and the Theft Liability Act, and the "money had and received" doctrine. ROA.20-20005.14, 58-68, 1823; RE Tab 10. Rather than enforce arbitration of the dispute in the state court, which is what their agreement with Rohi required,[2] B&P filed a motion in the bankruptcy court to reopen the ABC

---

[2] ROA.20-20005.341.

Dental's bankruptcy case and remove the state court lawsuit, which was granted. ROA.20-20005.14.

Before any discovery was conducted, B&P filed a 12(b)(6) motion based on res judicata. ROA.20-20005.14, 70-224, 1824. Rohi responded, and filed a motion to remand and abstain, alleging that the bankruptcy court lacked jurisdiction to decide the dispute and that mandatory or permissive abstention was appropriate. ROA.20-20005.251-300, 313-368, 370-437, 1824. In the alternative, Rohi requested leave to amend his petition to clarify his factual allegations to demonstrate the claims did not accrue or were not discovered until after the settlement conference, and to assert claims for fraud. ROA.20-20005.332-334.

In February 2019, the bankruptcy court denied Rohi's motion and granted B&P's motion to dismiss without leave to amend, finding Rohi's claims barred by res judicata. ROA.20-20005.10-28, 30; RE Tabs 2 and 3.

Rohi appealed to the district court. ROA.20-20005.6-8; RE Tab 4. The Honorable Sim Lake affirmed the bankruptcy court and entered final judgment against Rohi. ROA.20-20005.1817-1866; RE Tabs 6 and 7.

## SUMMARY OF ARGUMENT

The decisions of the lower courts are based on the false premise that resolving this dispute required the bankruptcy court to interpret and enforce the November Order dividing the settlement. To the contrary, regardless of what attorney's fees were allocated in that order, Rohi and his lawyers agreed to combine the attorney fee award and the award to Rohi into a gross recovery to be split according to the percentages outlined in their private agreement. B&P breached that agreement, and that breach, which occurred **after** the November Order, is the basis of Rohi's claims. Because Rohi's third-party claims alleging state-law causes of action against non-debtors did not require interpretation of the November Order, the bankruptcy court lacked "arising in" jurisdiction.

Jurisdiction is determined from the face of the plaintiff's complaint, and no more. Here, the lower courts acknowledged that the state court petition does not mention the November Order dividing the settlement proceeds. This should have been the end of the jurisdictional inquiry, and the lower courts should have concluded that, based on the complaint, no bankruptcy jurisdiction existed.

Even if the bankruptcy court had jurisdiction over these claims, mandatory abstention was appropriate because all factors were satisfied. At minimum, the bankruptcy court should have permissibly abstained. The bankruptcy court considered only one of fourteen permissive abstention factors which it concluded

weighed in favor of retention. Failing to consider all the factors was an abuse of discretion. The district court then abused its discretion by conducting its own conclusory analysis of the factors and affirming the bankruptcy court, despite eleven of the fourteen factors favoring abstention.

Even if the bankruptcy court had jurisdiction and abstention was not appropriate, the court erred by dismissing based on res judicata, and the district court erred when it affirmed the dismissal. It was fundamentally unfair for the lower courts to conclude that privity existed because B&P were Rohi's attorneys with a contingency fee interest, while, at the same time, conclude that sufficient antagonism existed between Rohi and his attorneys to require Rohi to bring claims against his own lawyers in the litigation they are handling for him. If the interests of Rohi and B&P were in conflict, privity does not exist for purposes of res judicata. If their interests were aligned, the judgment in that action does not preclude later claims between them. The lower courts ignored this principle when they applied res judicata and dismissed Rohi's claims.

A claim is not barred by res judicata if the court rendering judgment lacked subject-matter jurisdiction over the claim. Here, the bankruptcy court agreed that if the November Order requires no interpretation, it lacked jurisdiction over this dispute involving non-debtor parties. Furthermore, there is no prior judgment on the merits; nor could there have been because the misconduct did not occur until

after the allocation. After the judgement, B&P took the position that they were adverse or antagonistic to Rohi while they were representing him at the fee hearing. If true, this undisclosed conflict of interest negates privity and constitutes new facts which alter the legal rights or relations of the parties sufficient to bar res judicata. B&P should not have been protected from one breach of fiduciary duty because they successfully engaged in another.

To the extent Rohi's pleadings were insufficient to demonstrate that the claims alleged conduct that was extrinsic to and occurred after the November Order, the district court abused its discretion when it affirmed the bankruptcy court's denial of Rohi's motion for leave to amend his complaint. The amendment would not be futile because it would have alleged that, even if the misrepresentations occurred before the November Order, the breaches did not occur, and Rohi did not discover the falsity of the misrepresentations, until after the settlement allocation hearing.

## ARGUMENT

### I. The district court erred when it concluded that the bankruptcy court had jurisdiction over these purely state law claims.

The bankruptcy court erroneously concluded that the dispute requires interpretation of the November Order, thus conferring on the court "arising in or under jurisdiction under 28 U.S.C. § 1334(b)." ROA.20-20005.16. The district court agreed, concluding that when Rohi's factual allegations "are read in light of the court's record," they show that resolution of the claim is dependent upon the interpretation of the November Order. ROA.20-20005.1832. The lower courts erred in reaching this conclusion because jurisdiction was not established on the face of the petition, and resolution of this dispute is not dependent on interpreting the November Order.

### A. Standard of review for jurisdiction is de novo.

Whether a court has bankruptcy jurisdiction is a legal determination subject to de novo review. *See Newby v. Enron Corp. (In re Enron Corporation Securities)*, 535 F.3d 325, 333 (5th Cir. 2008).

### B. The petition (complaint) did not establish jurisdiction.

A federal court's jurisdiction depends on the well-pleaded complaint rule. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). "Under the well-pleaded complaint rule, federal jurisdiction exists only when a federal question is presented

on the face of the plaintiff's properly pleaded complaint." *Pam Capital Funding LP v. Nat'l Gypsum Co. (In re Kevco Inc.)*, 113 F. App'x 29, 31 (5th Cir. 2004). Jurisdiction "is determined from **the face of the plaintiff's complaint**, **and no more**." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 n.11 (5th Cir. 2017) (emphasis added). Here, the district court acknowledged that "state court petition does not mention the [November Order] dividing the proceeds from settlement of his qui tam action." ROA.20-20005.1832. This should have been the end of the jurisdictional inquiry, and the lower courts should have concluded that, based on the complaint, no bankruptcy jurisdiction existed. *See Glasstex, Inc. v. Arch Aluminum & Glass Co., Inc. (In re Polvado)*, No. 06-70151, 2006 Bankr. LEXIS 5059, *2 (Bankr. S.D. Tex. 2006) (Isgur, J.) (finding that the complaint, on its face, presented no allegations that recovery for the plaintiff, the alleged alter ego of the debtor, would in any way influence the bankruptcy estate of the debtor).

> ### C.   The November Order and confirmed plan cannot provide an independent basis for jurisdiction.

The bankruptcy court concluded that it had "arising in" jurisdiction because it had "continuing jurisdiction to interpret and enforce its own orders." ROA.20-20005.15-16. The district court agreed, concluding that "distribution of [the] settlement proceeds is material to consummation of the plan, and that the

[November Order] was incorporated into the plan … which the Bankruptcy Court retains jurisdiction to enforce." ROA.20-20005.1834. This conclusion was erroneous for two reasons.

First, Rohi's claims do not require interpretation of the November Order. The bankruptcy court would have continuing jurisdiction to interpret the allocation, but that allocation is immaterial because it does not alter the extrinsic agreements between Rohi and B&P (all third-party non-debtors) to combine their respective allocations into the "gross recovery" to be split amongst them pursuant to their private agreements.

Second, a court can only retain jurisdiction if it had jurisdiction in the first place. *See Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1025 (5th Cir. 1999). "The notion that, if a court *once* had jurisdiction to issue an order, it automatically *now* has jurisdiction to take further action concerning the order, disregards the mutable essence of subject matter jurisdiction and fails to even consider whether section 1334 is satisfied." *Mid-Atlantic Truck Centre, Inc. v. Pak-Mor Ltd. (In re Pak-Mor Mfg. Co.)*, No. SA-06-CA-658-RF, 2007 U.S. Dist. LEXIS 62198, at *9 (W.D. Tex. Aug. 10, 2007). Therefore, the November Order cannot act as an independent basis for jurisdiction over these claims. *See Segner v. Admiral Ins. Co. (In re Palmaz Sci., Inc.)*, No. 16-50552-CAG, 2018 Bankr. LEXIS 270 (Bankr. W.D. Tex. Jan. 31, 2018) (a court's stated retention of jurisdiction "cannot independently

decide" whether jurisdiction exists over post-confirmation dispute involving non-debtor parties).

The district court's conclusion that "distribution of [the] settlement proceeds is material to consummation of the plan" is a circular fallacy. The distribution of proceeds may be material to the consummation of the plan, but the only distribution at issue here is how a fixed payment from the debtor's estate will be split between a creditor (Rohi) and his attorneys (B&P), which was not addressed in the plan. ROA.20-20005.1090. When the bankruptcy court acknowledged that these claims had no effect on the bankruptcy estate, ROA.20-20005.15, that established that this division could not be "material to consummation of the plan."

The bankruptcy plan did not discuss any division of proceeds between Rohi and his lawyers, nor did the bankruptcy court retain jurisdiction over that division. The bankruptcy court retained jurisdiction with respect to certain matters, none of which included the division of proceeds between two non-debtor parties. ROA.20-20005.1097-98. Jurisdiction was retained to "interpret and enforce the terms and obligations set forth in the Rohi Settlement." ROA.20-20005.1098. The "Rohi Settlement" was defined by the plan to mean the "settlement reached between Rohi, and the ABC Defendants, as set forth in the Term Sheet dated July 26, 2017, as modified by the State Release Agreement." ROA.20-20005.1082. The Term Sheet discussed a settlement between Rohi and the underlying defendants, with

payments to be made "to Dr. Rohi in the aggregate amount of $3.5 million." ROA.20-20005.1367-1368. In exchange, Rohi agreed to release his claims against the underlying defendants – not his lawyers – and agreed to confirmation of the plan. ROA.20-20005.1367-1368. Nothing about the terms between Rohi and ABC Dentistry is challenged or affected by this suit.

The plan also incorporated the State Release Agreement, which modified the Term Sheet in two ways regarding payment: (1) the underlying defendants were required to pay $4 million (rather than $3.5 million), with the extra $500,000 being paid to the State; and (2) of the remaining $3.5 million, the State was to receive $1,599,000 in instalment payments made "contemporaneously with [those] made to [Rohi] and/or his counsel pursuant the chapter 11 plan." ROA.20-20005.1107-1108. Like the Term Sheet, the State Release Agreement did not address how Rohi would divide the remaining $1.9 million with his lawyers as part of his recovery. *See* ROA.20-20005.1107-1108. Because the plan only resolves the dispute between Rohi, the underlying defendants, and the State, the bankruptcy court did not retain jurisdiction over interpretation or enforcement of that plan.

### D. *Travelers* is factually and legally distinguishable.

Relying on *Travelers Indemnity v. Bailey*, 557 U.S. 137 (2009), the district court affirmed the bankruptcy court and concluded that Rohi's claims "are based on" rights created by the November Order, thus conferring the bankruptcy court

with "arising in or under" jurisdiction. ROA.20-20005.1834. The lower courts'

reliance on *Travelers* was misplaced because that case is both legally and factually

distinguishable.

In *Travelers*, the debtor, Manville, entered into a settlement with its insurers

which was incorporated into the bankruptcy plan. 557 U.S. at 141. Under the plan,

the insurers paid millions of dollars to establish a trust to benefit claimants who

were exposed to asbestosis due to Manville's liability. *Id.* In exchange, the plan

enjoined any person from suing the insurers for claims arising out of or related to

the insurance policies it provided to Manville. *Id.* at 142. When one insurer was

sued by third parties years later, it invoked the terms of the bankruptcy orders,

alleging the lawsuits were related to the policies it provided to Manville and that

the third parties were enjoined from filing the claims. *Id.* at 144-145. The

bankruptcy court agreed and concluded that the claims alleged were related to the

policies and subject to the prior injunctions. *Id.* at 145.

On appeal, the Supreme Court affirmed, concluding that the bankruptcy

court could clarify and enforce its prior orders and issue the injunctions because it

had retained jurisdiction to do so. *Id.* at 151. However, the Supreme Court

cautioned that its "holding [was] narrow" and it did not consider whether any

nondebtor could be legitimately bound by the bankruptcy court's orders on

constitutional grounds because the lower courts did not reach that issue. *Id.* Nor did

the Supreme Court consider whether a bankruptcy court today could "properly enjoin claims against nondebtor insurers that are not derivative of the debtor's wrongdoing." *Id.* at 155.

The factual differences between *Travelers* and this case undermine its precedential value. Unlike the insurers in *Travelers*, B&P did not have a dispute with Rohi subject to a settlement in the bankruptcy court that was incorporated into the plan. The bankruptcy court did not enter any order retaining jurisdiction over any dispute between Rohi and B&P, nor did the bankruptcy court enter an order enjoining Rohi from filing a lawsuit against his lawyers. Unlike the third parties who sued the insurers in *Travelers*, Rohi and B&P were not adverse in the bankruptcy proceedings; in fact, B&P represented Rohi. ROA.20-20005.107-108, 1821. The releases signed by Rohi in the bankruptcy released only those claims against the underlying defendants, not B&P. *See* ROA.20-20005.1107-1116. And, the plan did not release Rohi's claims against B&P. *See* ROA.20-20005.1042, 1090, 1099-1100.

Moreover, the court in *Travelers* made clear that its holding was "narrow" and merely assumed without deciding that the parties were provided adequate notice of the bankruptcy court's rulings so as not to be deprived due process. 557 U.S. at 155. Here, due process is lacking because Rohi's claims did not arise until **after** the bankruptcy court signed the November Order. ROA.20-20005.59-61,

1823. Unlike in *Travelers*, Rohi is attempting to litigate state-law claims against B&P that accrued post-confirmation, as opposed to the bankruptcy court enforcing its own confirmation order or issuing a clarifying order. *See In re Superior Air Parts, Inc.*, 516 B.R. 85, 97 n.9 (Bankr. N.D. Tex. 2014) (distinguishing *Travelers* on similar grounds).

This case is much more like *Grant v. Askanase*, No. H-09-3964, 2010 U.S. Dist. LEXIS 100918 (S.D. Tex. Sep. 24, 2010), than *Travelers*. In *Grant*, the court considered whether to exercise jurisdiction over an action by a creditor against a trustee for wrongful retention of funds paid during a dismissed bankruptcy proceeding. *Id.* at *3. The creditor alleged that he paid the trustee attorney's fees by mistake pursuant to a bankruptcy court order, even though the order did not include an award of attorney's fees. *Id.* at *6. The district court held that even though *Travelers* conferred jurisdiction to interpret or enforce orders from the bankruptcy court, the connection between the attorneys' fees allegedly paid by mistake to the trustee and the bankruptcy proceeding itself was "too attenuated" for the court to conclude that jurisdiction exits. *Id.* at *24.

Similarly, here, the connection between Rohi's claims and the bankruptcy proceeding is also "too attenuated." The bankruptcy court erred when it concluded that the "true focus of the dispute" is the interpretation of the November Order, when the order has no bearing on this dispute. Regardless of how attorney's fees

were allocated in that order, Rohi and B&P agreed that the attorney fee award would be combined with Rohi's award as a "gross recovery" and divided according to their previous agreement. ROA.20-20005.59-61. Just as in *Grant*, the wrongful retention of funds by B&P has "no effect on the administration of the bankruptcy estate." 2010 U.S. Dist. LEXIS 100918, at *25. "The attorneys' fees would not have been included in the estate, and … would have had no bearing on the activities surrounding the estate's liquidation." *Id.* The bankruptcy court lacked "arising in" jurisdiction, and it was error for the district court to conclude otherwise.

**II.      The district court erred by concluding that the bankruptcy court did not abuse its discretion when it declined to abstain and remand.**

Even if the bankruptcy court had jurisdiction, mandatory abstention was appropriate because all factors were satisfied. At a minimum, the bankruptcy court should have permissibly abstained and remanded because eleven of the fourteen permissive abstention factors were satisfied. The lower courts abused their discretion by declining to properly apply these doctrines.

### A.    Standard of review for non-abstention is abuse of discretion.

Bankruptcy courts' decisions not to abstain under section 1334(c) are reviewed for abuse of discretion. *See Edge Petroleum Operating Co., Inc. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 299 (5th Cir. 2007).

### B.    Mandatory abstention was required because all elements were satisfied.

This Court has interpreted section 1334(c) to require mandatory abstention when: "(1) the claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, [i.e., it is related to a case under title 11 but does not arise under or in a case under title 11]; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court." *Edge Petroleum*, 483 F.3d at 300. The district court concluded that mandatory abstention was not required because element (2) was lacking, stating: "a bankruptcy court's enforcement of its prior order is a 'core' matter." ROA.20-20005.1839. This statement is generally true, but inapplicable here.

A proceeding is core under 28 U.S.C. § 157 only "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). This Court has cautioned against interpreting section 157 in a way that causes "the entire range of proceedings under bankruptcy jurisdiction [t]o fall

21

within the scope of core proceedings." *Id.* at 95. "A state contract claim that does not depend on the bankruptcy laws for its existence is not a core proceeding." *Petro. Prods. & Servs. v. McClinton Energy Grp., LLC* (*In re Petro. Prods. & Servs.*), 561 B.R. 662, 665 (Bankr. S.D. Tex. 2016) (citing *Wood*, 825 F.2d at 97).

Here, Dr. Rohi's claims do not invoke a substantive right provided by Title 11, nor are they of a nature that could only arise in a bankruptcy case – they are simply state-law claims for breach of contract, breach of fiduciary duty, theft and violations of the DTPA. *See Balestri v. Hunton & Williams, LLP (In re Hallwood Energy)*, No. 09-31253-SGJ-11, 2012 Bankr. LEXIS 6066, at *19 (Bankr. N.D. Tex. Feb. 8, 2012) ("claims such as malpractice and breaches of state law common law duties" are "non-core state law claims."); *McVey v. Johnson (In re SBMC Healthcare, LLC),* 519 B.R. 172, 189 (Bankr. S.D. Tex. 2014) (claims by non-debtor against lawyer for breach of fiduciary duty and violation of the DTPA were "entirely based on state law and do not arise in or arise under title 11.").

The district court's conclusion that these state-law claims required interpretation of the November Order is based on an erroneous analysis of the pleadings. The pleadings do not at all mention the November Order. ROA.20-20005.1832. These claims do not require interpretation of the order, setting this case apart from *Travelers*. Unlike the claims here, which resulted from conduct occurring **after** the bankruptcy, the claims in *Travelers* resulted from conduct

before and during bankruptcy. *See* 557 U.S. at 138-139. Moreover, the claims in *Travelers* were related to a key element of the reorganization plan. *Id.* Here, whether the attorney's fees were paid directly to B&P or combined with Rohi's award into a gross recovery and split between two non-debtors as previously agreed is not a key component of the plan. Rohi's claims do not affect the plan in a manner that requires the bankruptcy court's interpretation or enforcement. This is especially important because this case arises in a post-confirmation context.

The bankruptcy court erred when it improperly read Rohi's claims as requiring interpretation of the November Order, and the district court abused its discretion when it used this erroneous interpretation to deny mandatory abstention. *See Superior Air,* 516 B.R. at 97-98 (rejecting party's attempt to confer bankruptcy jurisdiction by "crafting" allegations "to enforce a specific provision" of the plan when breach of contract claims accrued post-confirmation, and whether one party had an obligation to return property to the other had "nothing to do" with the plan).

The district court did not consider the remaining elements of mandatory abstention, but all were met. It is undisputed that this lawsuit was originally filed in state court, ROA.20-20005.58-68, and therefore element (3) is satisfied. *See J.T. Thorpe Co. v. Am. Motorists,* No. H-02-4598, 2003 U.S. Dist. LEXIS 26016, at *11 (S.D. Tex. June 6, 2003). Element (4) considers whether the action could be timely adjudicated in state court. *Edge Petroleum*, 483 F.3d at 300. Rohi satisfied

this element through sworn testimony and docket control orders, demonstrating that the case would be timely adjudicated.[3] *See WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp.,* 75 F. Supp. 2d 596, 605-606 (S.D. Tex. 1999) (factor satisfied when party "asserted that the trial calendar is not congested" and that the action would "likely" be heard sooner in state court). Because all elements of mandatory abstention were satisfied, the bankruptcy court had to remand this case. *See Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 780 (10th Cir. 1997) (bankruptcy court abused its discretion by declining to abstain when all mandatory abstention factors were met).

### C.    Permissive abstention was required.

A bankruptcy court has discretion to abstain from deciding either core or non-core proceedings "in the interest of justice, or the interest of comity with State courts or respect for state law." *Wood*, 825 F.2d at 93. "When determining whether to exercise discretionary abstention and equitable remand, there are fourteen factors that a court **must** consider and balance." *Regal Row Fina, Inc. v. Wash. Mut. Bank, FA*, No. 3:04-CV-1033-G, 2004 U.S. Dist. LEXIS 26704, at *29 (N.D. Tex. Dec. 9, 2004) (emphasis added). The factors are:

> (1) the effect or lack thereof on the efficient administration of the estate if the court remands or abstains; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficult or

---

[3] ROA.20-20005.374-437.

> unsettled nature of applicable law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy proceeding; (5) the jurisdictional basis, if any, other than § 1334; (6) the degree of relatedness or remoteness of a proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

ROA.20-20005.1841 (citing *McVey*, 519 B.R. at 190). The bankruptcy court considered **only one** of these fourteen factors: whether it had core jurisdiction over these claims given its erroneous belief that the claims required interpretation of the November Order. *See* ROA.20-20005.18. The district court nonetheless affirmed because it concluded that its "own review" of each factor "leads to the same conclusion." ROA.20-20005.1843-1844. The lower courts' conclusions regarding these factors for permissive abstention were incorrect.

> 1.    **When considering the 14 permissive abstention factors, 11 favor abstention and 3 are neutral.**

The district court concluded that factor (1) weighed against abstention because Rohi's "claim to a greater percentage of the settlement proceeds has a negative effect on the efficient administration of the bankruptcy estate." ROA.20-20005.1844. This is incorrect because Rohi is not claiming that the debtor should

have paid more, nor is Rohi claiming entitlement to the State's portion of the settlement. ROA.20-20005.59-65. The dispute is whether one nondebtor (B&P) should have shared its award with another nondebtor (Rohi). Resolution of this dispute will have no effect on the "efficient administration" of the bankruptcy estate. ROA.20-20005.15. Because the dispute involves only non-debtor parties, and because the outcome of the dispute will not deplete or increase the estate, this factor weighs in favor of abstention. *See McVey,* 519 B.R. at 190; *Balestri*, 2009 Bankr. LEXIS 2398, at *29-30.

The district court concluded that factors (2) and (3) weighed against abstention, stating "bankruptcy issues, not state law issues predominate because [Rohi's] claim to a greater percentage of the settlement proceeds is based on rights created by the [November Order]" and thus, "the nature of the applicable law is bankruptcy law, not state law." ROA.20-20005.1844. But interpretation of the November Order is not required to resolve the issue of whether B&P breached their duties and promises to Rohi by declining to share the attorney fee allocation when they induced him into the settlement by assuring him that they would. These factors weigh in favor of abstention because Rohi's claims are "garden variety" state law breach of fiduciary duty and contract claims against his lawyers "to which state courts are better able to respond." *McVey,* 519 B.R. at 190.

The district court did not address factor (4), which considers the presence of a related proceeding commenced in state court. ROA.20-20005.1844. This factor weighs in favor of abstention because Rohi commenced the lawsuit in state court before it was removed by B&P. *See Balestri*, 2009 Bankr. LEXIS 2398, at *30; *McVey*, 519 B.R. at 191.

The district court concluded that factor (5) weighed against abstention because it agreed with the bankruptcy court that "the heart of this dispute" involves the interpretation of the November Order, which the bankruptcy court had jurisdiction to interpret. ROA.20-20005.1843-1844. The district court held that the bankruptcy court "applied the contingency fee contract's provisions and resolved any interpretive disputes" when it issued the order. ROA.20-20005.1844. The record does not support this conclusion.

The only "interpretive dispute" resolved by the bankruptcy court relating to the fee agreement was whether a 40% or 45% contingency fee should be applied to the settlement, and the 40% figure was applied at the insistence of the State, not Rohi. ROA.20-20005.125-128. Rohi never asserted an objection during the allocation hearing. ROA.20-20005.106-142. This is because he was represented at the hearing by B&P and relied on their advice to accept the allocation and waive his right to appeal, since he was told that any allocation besides the State's would be part of the gross recovery that would be shared. ROA.20-20005.347, 353. The

27

allocation hearing did not address or resolve any dispute between Rohi and his lawyers because no dispute existed at that time. If there was a dispute, B&P could not represent Rohi at the hearing without engaging in a nonwaivable conflict of interest. *See* TEX. DISC. R. PROF'L. CONDUCT 1.06(b).

Regardless, because the bankruptcy court based its jurisdiction solely on section 1334, factor (5) weighs in favor of abstention. *See Hous. Baseball Partners LLC v. Comcast Corp. (In re Hous. Reg'l Sports Network, L.P.),* 514 B.R. 211, 215-16 (Bankr. S.D. Tex. 2014) (concluding factor "supports abstention and remand" when "jurisdiction is based solely on § 1334.").

The district court concluded that factor (6) – which considers the degree of relatedness or remoteness of a proceeding to the main bankruptcy case – weighed against abstention because Rohi's claims "constitute a challenge" to the "allocation of proceeds from settlement of the qui tam action." ROA.20-20005.1844. But Rohi does not challenge the court's allocation, he challenges the actions and ethical standards of his attorneys for inducing him to agree to the allocation under fraudulent and false pretenses. ROA.20-20005.59-64. In other words, Rohi challenges conduct extrinsic to the allocation, and is not trying to collaterally attack it. *See Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 870 (Tex. App. – Houston [14th Dist.] 2000, no pet.) ("Where a plaintiff is not seeking to set aside a judgment, but instead attacks conduct extrinsic to the judgment, the

claim is not a collateral attack on that judgement."). Because the dispute involves entirely non-debtor parties, with events occurring after confirmation, that deal exclusively with non-bankruptcy issues, and which will have no effect on the bankruptcy estate, this factor favors abstention. *See McVey,* 519 B.R. at 191.

The district court concluded that factor (7) – which considers the substance rather than the form of an asserted core proceeding – favors retention because "resolution of these claims require interpretation of the [November Order] which constitutes a core proceeding." ROA. 20-20005.1844. But again, no interpretation of the November Order is required. Rohi alleges that, no matter the attorney's fee allocation, he had an agreement with B&P to make it part of the gross recovery to be split amongst them in accordance with their private agreements. ROA.20-20005.59-64, 332-333. This dispute involves state-law claims for breach of fiduciary duty, breach of contract, and deceptive trade practices, premised on B&P's breach of their promises and material misrepresentations. *See* ROA.20-20005.59-64, 332-333.With no interpretation required, these claims "are not the type for which resolution by a bankruptcy court rather than a state court should be favored." *Hous. Baseball*, 514 B.R. at 216.

The district court concluded that factor (8) favored retention, stating: "there are no state law claims to sever because [Dr. Rohi's] claims involve a core bankruptcy matter." ROA.20-20005.1844. But this factor favors abstention

because there are no bankruptcy claims left to administer, and interpretation of the November Order is not necessary. This factor "weighs in favor of remand" because "this action involves only state law claims that … are not affected by the bankruptcy proceedings[.]" *J.T. Thorpe*, 2003 U.S. Dist. LEXIS 26016, at *25; *McVey*, 519 B.R. at 192 ("Considering that severance of claims is not a concern, this factor favors abstention.").

The district court concluded that factor (9) favored retention because "there is no indication that this case burdens the Bankruptcy Court." ROA.20-20005.1844. But courts have concluded that this factor favors abstention when, as here, the dispute involves adjudicating solely state law claims between non-debtor parties that will have no effect on the bankruptcy estate. *See Hanna v. Compass Bank (In re Hanna)*, No. 17-30338, 2018 Bankr. LEXIS 3974, at *7-8 (Bankr. S.D. Tex. Dec. 13, 2018). At worst, this factor is neutral.

The district court concluded that factor (10) favored retention because "this case involved forum shopping by [Rohi], who brought his claims in state court." ROA.20-20005.1844. This conclusion is not supported by the record. Rohi brought his claims in state court because this is not a bankruptcy proceeding. This is a lawsuit alleging purely state-law claims between non-debtor parties which arose after the plan was confirmed and the bankruptcy case was closed, the resolution of which will have no effect on the debtor's estate. ROA.20-20005.58-68. If there

30

was forum shopping, it was by B&P, who removed the state court action to the bankruptcy court rather than have this dispute decided by arbitration and enforced in state court, which is what their agreement with Rohi required. ROA.20-20005.278. Thus, even assuming Rohi had engaged in forum shopping (which he did not), this factor is neutral because B&P did as well.

The district court did not address factor (11), which considers the existence of a right to a jury trial. ROA.20-20005.1844-1845. Rohi filed suit in state court requesting a jury trial. ROA.20-20005.67. B&P did not consent to a jury trial, and thus, it was statutorily impossible for the bankruptcy court to conduct a jury trial in the adversary proceeding. *See* 28 U.S.C. § 157(e). Therefore, this factor weighs in favor of abstention. *See Hanna*, 2018 Bankr. LEXIS 3974, at *8.

The district court also did not address factor (12), which considers the presence of nondebtor parties. ROA.20-20005.1845. This factor favors abstention because this proceeding consists of **only** nondebtor parties, and abstention has been found proper when the "action contained primarily non-debtor parties." *See Genesis Producing Co., L.P. v. Smith Big Oil Corp.,* No. H-13-3342, 2014 U.S. Dist. LEXIS 109370, at *13 (S.D. Tex. Aug. 8, 2014).

The district court concluded that factor (13) favored retention because "there are no issue[s] of comity as there are no state law issues to resolve." ROA.20-20005.1845. But Rohi's petition alleges **only** state law issues, as he asserts state-

law claims for breach of fiduciary duty, breach of contract and deceptive trade practices, seeking state-law damages against only non-debtor parties. ROA.20-20005.61-67. Because Rohi already had instituted this suit in Texas state court, "this factor favors abstention." *McVey*, 519 B.R. at 192.

The district court did not address factor (14), which considers the possibility of prejudice to other parties in the action. ROA.20-20005.1845. This factor is neutral because there are no other parties.

### 2. Special weight should have been given to factors that were not considered by the bankruptcy court.

The bankruptcy court in another matter found that certain factors should be given greater weight, including: "(1) the effect or lack thereof on the efficient administration of the estate; (2) extent to which state law issues predominate over bankruptcy issues; (6) degree of relatedness or remoteness of the proceeding to the main bankruptcy case; and (12) the presence in the proceeding of nondebtor parties." *Wiley v. Southland Sys. (In re Southland Sys.)*, No. 06-33995, 2007 Bankr. LEXIS 3381, at *11 (Bankr. S.D. Tex. Sep. 21, 2007) (J. Isgur, Marvin). Because the claims here have no effect on the estate, the state-law issues predominate, the suit is unrelated to the main bankruptcy case, and only non-debtor parties are present, the bankruptcy court should have concluded, as it has in the past, that "these factors weigh in favor of remand." *Id.*

32

3.    **Because 11 of the 14 factors favored abstention,
the lower courts abused their discretion when
they retained jurisdiction.**

Although permissive abstention is committed to the discretion of the bankruptcy court, it acted unreasonably and without any guiding principles when it declined to consider all but one factor. Because eleven of the thirteen factors the bankruptcy court ignored and the one factor it did consider all favor abstention, the bankruptcy court should have permissibly abstained. *See McVey*, 519 B.R. at 192-193 (concluding it would permissively abstain when only 10 of the 14 factors were satisfied). The bankruptcy court's failure to do so was an abuse of discretion, and the district court abused its discretion by affirming. *See Turturici v. Nat'l Mortg. Servicing LP,* No. 2:10-CV-00146-GEB, 2010 U.S. Dist. LEXIS 91796, at *16 (E.D. Cal. Aug. 11, 2010) (abstention order of bankruptcy court reversed because the record "does not reveal that the bankruptcy court considered the [permissive abstention] factors").

III.    **The district court erred by affirming the bankruptcy
court's dismissal based on res judicata.**

Even if the bankruptcy court had jurisdiction over the state court lawsuit, it erred when it granted B&P's 12(b)(6) motion based on res judicata, and the district court erred when it affirmed the dismissal.

### A.    Standard of review for granting a 12(b)(6) motion is de novo.

The granting of a Rule 12(b)(6) motion is also reviewed de novo. *See Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). The res judicata effect of a prior judgment is a question of law that is also reviewed de novo. *See Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

### B.    All elements of res judicata were not satisfied.

"The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Test Masters*, 428 F.3d at 571. None of the elements were satisfied in this case. If the interests of Rohi and BP were not aligned in the bankruptcy case, privity is lacking. If their interests were aligned, the judgment in that action does not preclude later claims between these parties. Either way, res judicata fails, so the lower courts erred by applying it.

### 1.    The parties to the suits are not identical or in privity.

The district court concluded that the first element was satisfied because Rohi and B&P were "directly interested in the apportionment of the settlement proceeds" based on the contingency fee agreement. ROA.20-20005.1850-1851.

But having a contractual relationship "is not enough to show privity for res judicata purposes." *Schmidt v. Rodriguez (In re Rodriguez)*, 524 B.R. 111, 121 (Bankr. S.D. Tex. 2014). "Texas case law treats privity for res judicata purposes and privity of contract differently." *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 n.1 (5th Cir. 2007). For purposes of res judicata, there is no categorical rule for privity; instead the courts look to "the circumstances of each case." *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992).

If the interests of the two parties are in conflict in the main action, "privity does not exist" for purposes of res judicata. *See* 50 C.J.S. Judgments § 1099 (2009); *Emp'rs Cas. Co. v. Block,* 744 S.W.2d 940, 943 (Tex. 1988), *disapproved on other grounds*, *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996) (because respective positions were in conflict "no privity existed between the parties" and collateral estoppel did not apply); *State Farm Lloyds v. C.M.W.*, 53 S.W.3d 877, 886 (Tex. App.—Dallas 2001, pet. denied) (because of "conflicting positions" the parties were "not in privity" for purposes of res judicata); *Cluett v. Medical Protective Co.*, 829 S.W.2d 822, 829 (Tex. App. – Dallas 1992, writ denied) ("when an insurer and its insured take conflicting positions on the issue of coverage, they are not in privity.").[4]

---

[4] Courts in other jurisdictions have reached similar holdings. *See, e.g., Swindle v. State Farm Mut. Auto. Ins. Co.*, 533 S.W.3d 665, 668 (Ark. Ct. App., 2017) ("Although an attorney-client relationship is usually sufficient to satisfy the privity requirement, we hold that this is not the

Here, B&P states that "sufficient claims or antagonism existed" between the firm and Rohi at the November 2017 hearing. ROA.20-20005.453, 734-735. If B&P had no intention of including the attorney's fee allocation in the gross recovery to be shared with Rohi (notwithstanding their representations to Rohi), their interests in obtaining the maximum recovery of attorney's fees was not aligned with Rohi. As counsel for B&P explained, "there's only so much money to be distributed," so "every dollar that goes to attorneys is one less dollar that can go to Dr. Rohi … that's the sufficient kind of claim or antagonism that would have made it necessary to bring it up at that time and that it existed at that time." ROA.20-20005.735. Because their interests were in conflict, privity between Rohi and B&P could not be established for purposes of res judicata.[5] *See Block,* 744 S.W.2d at 943. The lower courts erred when they held otherwise.

The district court concluded that this requirement was satisfied because B&P was a "party" to the bankruptcy proceedings based on their contingency fee agreement. ROA.20-20005.1848. But under Texas law, "an attorney with a

---

case when the parties' interests are adversary to each other."); *Schmidt,* 524 B.R. at 121-22 (concluding that privity for purposes of res judicata was lacking when "the parties' conflicting positions prevent them from representing each other's interests.").

[5] Moreover, at least one Texas state court has rejected the notion that a lawyer representing a client satisfies the privity requirement for res judicata. *See Hernandez v. Lara,* No. 13-04-00254-CV, 2006 Tex. App. LEXIS 6656 (Tex. App. – Corpus Christi, July 27, 2006, no pet.) (reversing summary judgment on res judicata because privity was not established, stating the lawyer "was never a party to the underlying suit, he was appellant's attorney.").

contingent fee contract is not so directly interested in the subject matter of a lawsuit as to make him a 'party' [in the litigation]." *Dow Chem. Co. v. Benton*, 357 S.W.2d 565, 568 (1962). The district court recognized this "general rule" but claimed that an exception applied "in cases where the judge must approve the attorney's fee." ROA.20-20005.1849-1851 (citing *Indem. Ins. Co. v. McGee*, 356 S.W.2d 666 (1962) and *Postal Mut. Indem. Co. v. Ellis*, 169 S.W.2d 482 (1943)). But *McGee* and *Ellis* are both distinguishable, and their holdings cannot be applied in the context of res judicata.

The issue in both *Ellis* and *McGee* was whether the attorneys representing the plaintiffs were "parties" to the actions within the meaning of the judicial disqualification statute. *Ellis*, 169 S.W.2d at 483; *McGee*, 356 S.W.2d at 667. The courts recognized that the statute required disqualification "where either of the parties" may be connected to the judge, and held that the statute was "not restricted to those who are named as parties in the pleadings, but … includes all persons directly interested in the subject matter and result of the suit, regardless of any appearance of their names in the record." *Ellis*, 169 S.W.2d at 484. The courts held that, because the workman's compensation statute made "it the duty of the court to judicially determine what fee the employee should pay the attorney for his services in the case," the attorneys were parties within the meaning of the disqualification statute. *See id.* at 485; *McGee*, 356 S.W.2d at 668.

*Ellis* and *McGee* did not hold that privity existed for purposes of res judicata based on a contingency fee agreement, which is the issue here. *Ellis* noted that the attorney was a party for purposes of the disqualification statute because he "was one of the contending parties as against the employee as to the value of the services rendered by him and the amount of the fee to be allowed therefor, and it was within the power of the judge to favor him in the decision of that question." 169 S.W.2d at 485. This reasoning would not apply in the res judicata context because "res judicata applies only to adverse parties." *Getty Oil*, 845 S.W.2d at 800. If the parties' interests are not aligned in the original suit, privity is lacking. *Block,* 744 S.W.2d at 943; *State Farm Lloyds*, 53 S.W.3d at 886; *Cluett*, 829 S.W.2d at 829. If their interests are aligned in the first action, "the judgment in that action does not preclude later claims between those parties." *Getty Oil*, 845 S.W.2d at 800. Either way, res judicata fails.

> ## 2. There is no prior judgment from a court of competent jurisdiction.

The second element of res judicata is also lacking. The bankruptcy court concluded this element was satisfied because it possessed jurisdiction "over the [November Order] which divided the settlement proceeds among the parties including [Rohi] and Brewer & Pritchard specifically." ROA.20-20005.21. The district court agreed, stating "when the parties could not agree how to divide the

settlement proceeds from the qui tam action, they agreed to have the Bankruptcy Court divide the proceeds." ROA.20-20005.1851. The word "parties" as used by the lower courts is misleading and not supported by the record.

The attorney's fees were allocated by and through Rohi as the "person receiving payment" for the qui tam claim. *See* TEX. HUM. RES. CODE § 36.110(c). Accordingly, the preliminary terms of the settlement indicated that the $4 million in proceeds would be "**payable to Dr. Rohi as attorney fees**, retaliation damages and a relator's share, and the amount of the settlement proceeds payable to the State if any." ROA.20-20005.353 (emphasis added). The final terms indicated that the bankruptcy court would "determine the amount of the $4 million settlement **payable to Dr. Rohi** and the amount of the settlement proceeds **payable to the State**." ROA.20-20005.350 (emphasis added). The amount allocated to B&P was not addressed. *See* ROA.20-20005.350-356. When Rohi and the State could not reach an agreement concerning the allocation, B&P argued that Rohi (not them) should obtain a larger fee award. *See* ROA.20-20005.178 ("Dr. Rohi is expressly entitled to recover **his** … reasonable attorney's fees …") (emphasis added). The "parties" to the dispute decided by the bankruptcy court were Rohi and the State, not B&P.

Accordingly, the November Order cannot be a prior judgment because Rohi's claims against B&P did not arise until after the order was entered. ROA.20-

20005.60-61. The bankruptcy court acknowledged that no dispute existed at the time of allocation, stating its "disbursements **led to a dispute** between [Rohi] and his attorneys … regarding the division of funds." ROA.20-20005.14 (emphasis added). The district court echoed this statement: "The disbursements **led to a dispute** between Appellant and Appellees." ROA.20-20005.1823 (emphasis added). If the disbursements "led to" the dispute, the November Order calling for the disbursements necessarily could not resolve the dispute.

If the November Order requires no interpretation, the bankruptcy court agreed that it did not have jurisdiction over this dispute involving non-debtor parties. ROA.20-20005.15. "It is black-letter law that a claim is not barred by res judicata . . . if the court rendering judgment lacked subject-matter jurisdiction over [the] claim. . . ." *Browning v. Navarro*, 887 F.2d 553, 558 (5th Cir. 1990). "A judgment rendered by a court having no jurisdiction of claims or rights asserted in a later case does not support a plea of res judicata or estoppel by judgment of claims made in the later case." *El Paso Nat. Gas Co. v. Am. Petrofina Co.*, 733 S.W.2d 541, 552 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Because the bankruptcy court would have lacked jurisdiction to resolve this dispute involving non-debtor parties, there is no prior judgment from a court of competent jurisdiction.

### 3.     There is no prior final judgment on the merits.

The third element of res judicata is also lacking. The bankruptcy court erroneously found this element was satisfied by confusing a decision on the merits over the attorney fee dispute between Rohi and the State (which did occur) with a decision on the merits over an attorney fee dispute between Rohi and B&P (which did not occur because it did not yet exist). The bankruptcy court stated, "the issue of whether [Rohi's] attorney's fees would be paid from settlement proceeds was disputed and subject to significant briefing from the parties." ROA.20-20005.22. Again, the use of the term "parties" is not accurate because the dispute was **only** between Rohi and the State, not Rohi and his lawyers, and the briefing relied on by the bankruptcy court reflects this.

To establish this element, the bankruptcy court relied on briefing filed by B&P **on behalf of** Rohi and concluded that Rohi's "own pleadings reflect a proposed award of $412,440.80, which corresponds to a 45% contingency fee to his attorneys from the settlement proceeds." ROA.20-20005.22-23. But that pleading referred to contingency fees to be deducted from the **State's portion** of the settlement, not Rohi's portion. ROA.20-20005.1120. That pleading did not reveal a dispute between Rohi and his lawyers; instead, it amended a prior pleading to "correct a substantial mathematical error" on a proposed distribution. ROA.20-20005.1120.

The record demonstrates that the dispute over which the bankruptcy court entered judgment was between Rohi and the State, not Rohi and his lawyers. When the $3.5 million settlement was reached, Brewer informed Rohi that the State would not consent to the settlement, as required by statute, "unless it receives some portion of the [settlement] proceeds." ROA.20-20005.347. To resolve **this** dispute, Brewer proposed that Rohi agree to an allocation of the settlement in which he give up $350,000 to the State, explaining "[this will] leave **you** a gross recovery of $3,150,000 payable over the next 5+ years." ROA.20-20005.347. (emphasis added). Once the State agreed to the $4 million settlement, Rohi and the State agreed "that [the bankruptcy judge] will determine the amount of the $4 million settlement proceeds payable to Dr. Rohi and the amount of the settlement proceeds payable to the State." ROA.20-20005.350. Rohi never agreed to have the bankruptcy court resolve a dispute between him and his attorneys because no dispute existed. *See* ROA.20-20005.350.

At most, there was a dispute between the State and B&P about the attorney's fees **payable to Rohi**, so Rohi had no reason to contest what was to be paid. The State took the position "that Dr. Rohi's counsel [was] entitled to no attorney fees and expenses" from the $4 million settlement. ROA.20-20005.174. B&P called this argument illogical, stating Rohi was entitled to "**his** attorney fees." ROA.20-20005.174. (emphasis added). B&P relied on section 36.110(c) of the Texas

Human Resources Code, which governs an award of attorney fees to a "private plaintiff" like Rohi, not a direct attorney fee award to B&P. *See* Tex. Hum. Res. Code § 36.110(c). The record does not reflect a dispute between Rohi and his attorneys, and the bankruptcy court erred when it concluded that a dispute existed. If a dispute did exist, privity is lacking because Rohi's interests were not aligned with those of B&P. *See Block,* 744 S.W.2d at 943.

The bankruptcy court also found that there was a final judgment on the merits because "the parties were presented with the option to participate in an evidentiary hearing to determine the allocation of the attorney's fees." ROA.20-20005.23. But B&P represented Rohi, and appeared on his behalf, not on their own behalf. ROA.20-20005.107-108. "A lawyer is an agent of his client." *Augustson v. Linea Aerea Nacional-Chile S.A.*, 76 F.3d 658, 665 (5th Cir. 1996). If B&P were ever acting in their own interests, they had a duty to disclose this conflict to Rohi so he could waive the conflict or obtain separate counsel. *See* Tex. R. Prof'l. Cond. 1.06(b), (c). Engaging in this undisclosed conflict would constitute another breach of fiduciary duty. *See Vinson & Elkins v. Moran*, 946 S.W.2d 381, 412-413 (Tex. App. – Houston [14th Dist.] 2001, no pet.). This disclosure never occurred, and there is no evidence that Rohi was aware of any conflict or adversity when he agreed to follow his lawyers' recommendation and consented to the allocation under false pretenses.

Moreover, if B&P were considering changing the terms of their agreements and reneging on their promises by retaining all of the fee allocation, and if they intended for the November Order to resolve the dispute, then they also had a duty to disclose this fact to Rohi and allow him to retain separate counsel. *See Keck v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 699 (Tex. 2000) (new agreement made during attorney client relationship is effective only if "the client is independently represented in making the agreement.") (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.08(g)). In effect, B&P engaged in an unknown and undisclosed conflict of interest by having their client agree to a judgment that effectively released them (by way of res judicata) from any future liability. A release of liability obtained during the existence of an attorney-client relationship is invalid under Texas law without proper disclosure. *See id.* There is no reason why this policy should not apply to the circumstances here, where the judgment release was obtained without proper disclosure during the existence of an attorney-client relationship.

Under Texas law, "a judgment in one suit will not operate as res judicata to a subsequent suit on the same question between the same parties where, in the interval, the facts have changed, or new facts have occurred which may alter the legal rights or relations of the parties." *Marino v. State Farm Fire & Cas. Ins. Co.*, 787 S.W.2d 948, 949-50 (Tex. 1990). After the judgement, B&P took the position

that they were adverse or antagonistic to Rohi while they were representing him at the fee hearing. ROA.20-20005.453, 734-735. These are new facts, which were not disclosed before or during the November 2017 hearing, that give rise to another breach of fiduciary duty claim.

"[R]es judicata is a principle of public policy and should be applied so as to give rather than deny justice." *Dore v. Kleppe*, 522 F.2d 1369, 1374 (5th Cir. 1975). Therefore, "principles of res judicata are not ironclad," but must be applied to accomplish justice in the light of public policy. *Bogard v. Cook,* 586 F.2d 399, 408 (5th Cir. 1978). Here it was fundamentally unfair and inequitable to apply res judicata to protect B&P from one breach of fiduciary duty because they successfully engaged in another.

### 4.    Not the same causes of action.

The bankruptcy court found this element satisfied, concluding that the facts in this dispute "parallel those" in *Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382 (5th Cir. 2000), because the "current suit challenges the same nucleus of operative facts the court considered in the [November Order] – the interpretation of the fee agreements between the parties and the division of the settlement proceeds among the parties and the attorneys." ROA.20-20005.126. The district court agreed, stating "the only way [Rohi] could prevail on the causes of action asserted in this action was by convincing the Bankruptcy Court that its prior

order allocating the settlement proceeds was in error." ROA.20-20005.1858. But *Intelogic* is distinguishable, and Rohi's claims are not a collateral attack on the prior judgment.

In *Intelogic*, this Court concluded that a bankruptcy court's award to a professional pursuant to 11 U.S.C. § 330 "represents a determination of the nature, the extent, and the value of such services" sufficient to preclude malpractice claims based on alleged omissions by the professionals in rendering the same services considered by the bankruptcy court during the fee application hearing. 200 F.3d at 387. In contrast, here there was no fee application by B&P, no hearing on the reasonableness of attorney's fees, and that issue was not before the bankruptcy court. ROA.20-20005.130. The district court found this distinction immaterial, stating "the award of fees to B&P at the close of the November 7, 2017, hearing implied a finding of reasonableness" and "the award of attorney's fees from the qui tam action settled by [them] was the disputed issue in the debtor's bankruptcy case." ROA.20-20005.1858-1859 (emphasis in original). But the issue here is not whether the attorney fees awarded to B&P were reasonable, but whether the fees awarded (whatever the amount) should have been included in the "gross recovery" and shared with Rohi in accordance with the parties' agreements. ROA.20-20005.60-63.

This case also is distinguishable from *Intelogic* because the claims here did not arise until **after** the settlement allocation. "Obviously, if the cause of action in the second action arises after the rendition of the judgment in the first action, it is a different cause of action not barred by the prior judgment." *Am. Home Assurance Co. v. Chevron, USA, Inc.,* 400 F.3d 265, 272 n.22 (5th Cir. 2005) (quoting 46 AM. JUR. JUDGMENTS § 532); *see also Hernandez,* 2006 Tex. App. LEXIS 6656, at *6 (res judicata did not apply to client's claims against attorney "for fraudulent misrepresentation and violations of the DTPA" because those claims "were not, and could not have been made, a part of the underlying suit for the obvious reason that [they] arose as a result of [the attorney's] alleged conduct in the underlying suit.").

Moreover, unlike the malpractice claim in *Intelogic*, the claims here stem from conduct unrelated to the legal services during the bankruptcy, and the complained-of conduct occurred post-allocation. The "sole issue" in the underlying proceedings was whether attorney's fees were recoverable at all, not whether an attorney fee award would be considered part of the gross recovery to be split according to the contingency fee agreement between Rohi and B&P. The bankruptcy court confirmed the settlement, but never considered the issue in this case: whether B&P breached their promises to Rohi by retaining the entire attorney

fee award when B&P had induced him into accepting the allocation by telling him this award would be part of his gross recovery. ROA. 20-20005.60-61, 332-333.

Dr. Rohi could prevail on the causes of action without collaterally attacking the November Order. "A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose." *Spera*, 25 S.W.3d at 870. "Where a plaintiff is not seeking to set aside a judgment, but instead attacks conduct extrinsic to the judgment, the claim is not a collateral attack on that judgement." *Id.* at 871. In other words, when, as here, a client is attacking the conduct of the lawyer rather than the judgment itself, there is no collateral attack. *See id.* at 872. Here, Rohi complains of conduct by B&P extrinsic to the order, including unconscionable conduct in retaining fees that, regardless of what the bankruptcy court allocated, were to be include in the "gross recovery" and shared with Rohi. ROA. 20-20005.60-61, 332-333. Those claims are not a collateral attack on the order, and no interpretation of the order was required. *See Spera*, 25 S.W.3d at 872 (client's claim that lawyer's conduct caused additional attorney's fees was not a collateral attack on the judgment awarding the fees); *Querner v. Rindfuss*, 966 S.W.2d 661, 668 (Tex. App. – San Antonio 1998, pet. denied) (prior judgment approving attorney's fees "in view of the work performed in the absence of any fraudulent activity" did not bar the claims that attorney was entitled to no fees "in view of the alleged wrongful acts.").

Although the first judgment settled the dispute between Rohi and the State and allocated the $4 million settlement, this dispute is based on B&P's failure, after this allocation, to abide by their agreement to include the attorney fee allocation (whatever it is) as part of the gross recovery to be shared with Rohi. These are not the same causes of action. *See Nat'l Benevolent Ass'n of the Christian Church v. Weil, Gotshal & Manges, LLP (In re Nat'l Benevolent Ass'n of the Christian Church)*, 333 F. App'x 822, 827 (5th Cir. 2009) (distinguishing *Intelogic* because party's "malpractice claim [was] based on [attorney's] alleged pre-petition malpractice that was unrelated to its legal services during the bankruptcy and the bankruptcy court's fee award.").

### C. Even if all elements of res judicata are satisfied, the doctrine does not apply because these claims could not have been brought in the prior proceeding.

Even if all these elements are satisfied, the claims are not barred unless they could and should have been brought in the former proceeding. *See Intelogic*, 200 F.3d at 388. Because these claims did not accrue until B&P breached the agreement and reneged on their promises, which was after the fee allocation hearing, this requirement was not satisfied, and it was error for the lower courts to conclude otherwise.

The district court found this requirement was satisfied because Rohi "was aware that the Bankruptcy Court was considering [B&P's] fee allocation at the November 7, 2017, hearing" and "failed to object." ROA.20-20005.1862. But Rohi had no reason to object because, from the beginning, B&P assured him in written and oral communications that the attorney fee award would be part of the gross recovery and shared with him. *See, e.g.,* ROA.20-20005.347. Therefore, it was immaterial to Rohi what percentage of the $4 million was allocated to him or B&P because, no matter the allocation, it would all be shared. Accordingly, Rohi had no notice of real or potential claims against B&P until after the allocation when B&P refused to share the attorney fee award. ROA.20-20005.61.

The district court rejected Rohi's claim that he "did not know that [B&P intended to keep the entire amount allocated to them" stating, "the law of the Fifth Circuit does not require a party to have understood the legal implications of the facts giving rise to a claim in order for the claim to be barred by res judicata." ROA.20-20005.1863 (citing *In re Howe*, 913 F.2d 1138, 1147 (5th Cir. 1990)). But whether B&P "intended to keep the entire amount allocated to them," notwithstanding their agreement with Rohi to share this amount, is not a "legal implication," it is a **factual one**. Rohi did not know of the factual basis for his claim until B&P breached the agreement and reneged on their promises, which was after the fee allocation hearing. In other words, this case does not involve a

misunderstanding of the legal implications of the facts giving rise to a claim, but the fact that the claim had not yet accrued.

Moreover, Rohi does not allege that he did not know the legal implications of his contingency fee agreement or the November Order. He alleges that, regardless of the allocation in the November Order, he had an agreement with B&P to share in the fee award according to the contingency fee agreement. ROA.20-20005.61. Rohi had no reason to suspect that B&P would renege on this agreement, and the doctrine of res judicata does not bar claims that a party did not know existed. *See Sanchez v. Ameriquest Mortg. Co. (In re Sanchez)*, 372 B.R. 289, 308 (Bankr. S.D. Tex. 2007); *Penthouse Media Grp., Inc. v. Pachulski Stang Ziehl & Jones LLP*, 406 B.R. 453, 463 (S.D.N.Y. 2009) (res judicata did not apply to client's legal malpractice claims when client "had no reason to suspect that [the lawyer's] work was inadequate and in fact made no objection to the fee application and continued to retain [the lawyer] as its advisor until a year after the fee hearing.").

The district court relied on *Howe*, but that case is distinguishable. The plaintiffs in *Howe* were former debtors who sued their former creditors in state court for lender liability more than five years after confirmation of their Chapter 11 bankruptcy plan. 913 F.2d at 1140. The debtors "were diametrically opposed from the inception of the reorganization proceedings, and the [debtors] had, and took

full advantage of, the right to be heard in the reorganization proceedings." *Id.* at 1146. Thus, the creditors removed the action to federal court and sought to dismiss the claims based on res judicata because the debtors had "vigorously contested the validity" of the creditors lien in adversary proceedings in the bankruptcy court "and contended that [its] loan was usurious." *Id.* at 1144. The debtors responded that, "although they may have been aware of the basic facts underlying their claims, they were not aware of the significance of those facts." *Id.* at 1147. The Court rejected this argument, finding ignorance of the law insufficient. *See id.* However, the Court noted that it would be different if the debtors alleged that "the facts forming the basis of [their] claims were undiscoverable until after those [bankruptcy] proceedings." *Id.*

Here, the facts forming the basis of Rohi's claims were not discoverable until after the allocation forming the underlying judgment because that is when B&P reneged on their agreements. ROA.20-20005.59-61.[6] Unlike the debtors in *Howe*, Rohi was not "diametrically opposed" to his lawyers in the bankruptcy; in fact, there is no dispute that they represented him in the underlying proceedings. ROA.20-20005.1821. Rohi believed his interests were aligned with his attorneys because they would share in the attorney fee allocation, so he did not object.

---

[6] To the extent the pleadings were insufficient to establish this fact, leave to amend should have been permitted. *See* § IV *infra*.

Unlike the debtors in *Howe*, Rohi had no notice of his claims or reason to institute an adversary proceeding. The facts of *Howe* are strikingly dissimilar.

Though the facts of this case are admittedly "not extreme as those of *Intelogic*,"[7] the district court relied on that case to conclude that Rohi "knew or should have known during or after the November 7, 2017, hearing that his allocation and settlement proceeds was $720,000.00 and that B&P's allocation was $1,681,000.00." 20-20005.1863-1864. But Rohi's knowledge of the amount of the fee allocation is immaterial if Rohi's allegations are taken as true and he was promised a portion of that allocation but did not receive it.

In *Intelogic*, **summary judgment evidence** established that the plaintiff had a "general awareness of the background facts" underlying the malpractice claims "before the fee hearing" and "realized the real possibility of a link between its flawed numbers and [the accountant's] services" but nonetheless made a "deliberate choice not to voice its concerns regarding the quality of services at the fee hearing." 200 F.3d at 391. Conversely, this was a Rule 12(b)(6) proceeding with no allegations and no evidence that Rohi knew that B&P were going to renege on their promises until **after** the allocation. Rohi's objections were not raised at the settlement conference because B&P told Rohi that they needed to calculate their fees as a separate award to get more money for him (as opposed to the State, who

---

[7] ROA.20-20005.1863.

was not their client) and assured Rohi that any attorney fee award would be included in the gross recovery to be split between them. ROA.20-20005.332-333. However, after B&P induced Rohi to accept the settlement and forego any appeal, they reneged on their representations and breached their agreement, and this what "led to" this dispute. *See* ROA.20-20005.332-333. This element was not satisfied. *See Penthouse Media*, 406 B.R. at 461 ("It would be unreasonable to require a party to bring a malpractice claim against attorneys who still represent that party" and when the client "ha[s] no reason to suspect that [their lawyer's] work was inadequate.").

One of the main goals of res judicata is to promote judicial economy and fairness and "accomplish justice in light of public policy." *Jackson v. Johns-Manville Sales Corp.*, 727 F.2d 506, 521 (5th Cir. 1984). It was fundamentally unfair for the lower courts to conclude that B&P were in sufficient privity with Rohi to establish the first element of res judicata because they were his attorneys while, at the same time, conclude that sufficient antagonism to require Rohi to bring claims against his own lawyers in the litigation where they represent him. The judgment dismissing these claims on res judicata should be reversed.

**IV.    The bankruptcy court abused its discretion when it denied leave to amend the complaint, and the district court erred when it affirmed.**

In the event that the pleadings were insufficient to establish that the complained-of breaches occurred only after the November Order, Rohi made an alternative request for leave to amend his complaint. ROA.20-20005.332-34. The bankruptcy court dismissed the claims without leave to amend, ROA.20-20005.28, and the district court affirmed that ruling. ROA.20-20005.1868.

Decisions to deny leave to amend a complaint are reviewed for abuse of discretion. *See Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994). But it is a narrowly circumscribed discretion. Leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). "In the context of motions to amend pleadings, discretion may be misleading, because [the rule] evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999). "Unless there is a **substantial reason** to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000) (emphasis added).

One legitimate reason to deny leave is if an amendment would be futile, which is the basis upon which district court relied:

> An amended complaint may be denied for futility when the plaintiff seeks to add claims that are barred by res judicata because the amendment does not to cure the deficiency of the original complaint-failure to state a claim upon which relief could be granted.

ROA.20-20005.1868. But this conclusion was erroneous because the proposed amendments would have made even more clear that the claims did not accrue until after the settlement allocation. ROA.20-20005.332-333. Causes of action that could not have accrued at the time of a previous suit are not barred by res judicata. *See Compania Financiara Libano, S.A. v. Simmons*, 53 S.W.3d 365, 367 (Tex. 2001); *Hernandez*, 2006 Tex. App. LEXIS 6656, at *6 (claims against attorney "for fraudulent misrepresentation and violations of the DTPA" arising from settlement of underlying suit "were not, and could not have been made, a part of the underlying suit for the obvious reason that these claims arose as a result of [the attorney's] alleged conduct in the underlying suit.").

For an amendment to be futile, it must appear "**beyond doubt** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stripling*, 234 F.3d at 872 (emphasis added). The proposed amendments would have alleged that, even if the misrepresentations occurred prior to the November 2017 hearing, the breaches did not occur, and Rohi did not discover the falsity of the misrepresentations, until after the settlement allocation hearing, when B&P "renege[d] on their agreement and omit[ed] the attorney fee award from the

gross recovery." ROA.20-20005.332-333. These allegations would demonstrate that the "facts forming the basis" of Rohi's claims "were undiscoverable," thereby precluding res judicata. *See Howe*, 913 F.2d at 1140. Accordingly, the amendment was not futile, and the lower courts abused their discretion in reaching this conclusion. *See Stripling*, 234 F.3d at 872.

## CONCLUSION & PRAYER

For the all these reasons, Appellant Dr. Saeed Rohi respectfully requests that the Court reverse the bankruptcy court's dismissal of his claims based on res judicata and order the bankruptcy court to remand these claims to the state court where they were originally filed.

Respectfully submitted,

ALEXANDER DUBOSE & JEFFERSON LLP

/s/ Kevin Dubose
Kevin Dubose
State Bar No. 06150500
Federal ID No. 20300
Email: kdubose@adjtlaw.com
1844 Harvard Street
Houston, Texas 77008
Telephone: (713) 523-2358
Facsimile: (713) 523-4553

THE KASSAB LAW FIRM

/s/ Lance Christopher Kassab
Lance Christopher Kassab
Texas State Bar No. 00794070

57

Federal ID No. 433516
Email: lance@kassab.law
1214 Elgin Street
Houston, Texas 77004
Telephone: (713) 522-7400
Facsimile: (71) 522-7410

ATTORNEYS FOR APPELLANT
DR. SAEED ROHI

## CERTIFICATE OF SERVICE

I certify that on this day this document was served via the CM/ECF system, which will send a notice of electronic filing to all parties requesting and entitled to receive ECF notice, including:

Ben A. Baring, Jr.
bbaring@dhmtlaw.com
DE LANGE, HUDSPETH,
MCCONNELL & TIBBETS, LLP
1177 West Loop South, Suite 1700
Houston, Texas 77027
*Appellate Counsel for Appellees*

Kenneth A. Zimmern
attorney@zimmern.com
ZIMMERN LAW FIRM, P.C.
8588 Katy Freeway, Suite 226
Houston, Texas 77024
*Attorney for J. Mark Brewer*

J. Mark Brewer
brewer@bplaw.com
A. Blaire Hickman
hickman@bplaw.com
BREWER & PRITCHARD, PC
800 Bering, Suite 201
Houston, Texas 77057
*Attorneys for Brewer & Pritchard, PC*

Sean Ryan Buckley
buckleyfirm@gmail.com
Sean Buckley & Associates, P.L.L.C.
770 S. Post Oak Ln., Suite 620
Houston, Texas 77056
*Attorney for A. Blaire Hickman*

Dated: March 6, 2020.

/s/ Lance Christopher Kassab
Lance Christopher Kassab

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,917 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Times New Roman font, except for footnotes which are in 12-point Times New Roman font.

Dated: March 6, 2020.

/s/ Lance Christopher Kassab
Lance Christopher Kassab