No. 20-20005

---

## In the United States Court of Appeals
## for the Fifth Circuit

---

IN THE MATTER OF: ABC DENTISTRY, P.A., ET AL.,
DEBTORS

---

DR. SAEED ROHI,
APPELLANT

VS.

J. MARK BREWER; A. BLAIRE HICKMAN; BREWER & PRITCHARD, P.C.,
APPELLEES.

---

On Appeal from the United States District Court,
Southern District of Texas, Houston, Texas
No. 4:19-CV-00682

---

BRIEF OF APPELLEES, J. MARK BREWER, A. BLAIRE HICKMAN AND
BREWER & PRITCHARD, P.C.

---

BEN A. BARING, JR.
R. TRAVIS PIPER
DE LANGE, HUDSPETH, MCCONNELL & TIBBETS, L.L.P.
1177 W. LOOP SOUTH, STE. 1700
HOUSTON, TX 77027
PHONE: 713-871-2000
FACSIMILE: 713-871-2020
*Counsel for Appellees*

### CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

<table>
<tr><td><strong>APPELLANT-PLAINTIFF</strong></td><td><strong>APPELLEES-DEFENDANTS</strong></td></tr>
<tr><td>Dr. Saeed Rohi</td><td>J. Mark Brewer<br>A. Blaire Hickman<br>Brewer & Pritchard, P.C.</td></tr>
</table>

**Counsel for Appellant-Plaintiff:**

Kevin Dubose
Alexander Dubose & Jefferson LLP
1844 Harvard St.
Houston, TX 77008
Telephone: 713-523-0667
*Appellate Counsel*

Lance Christopher Kassab
David Eric Kassab
The Kassab Law Firm
1214 Elgin St.
Houston, TX 77004
Telephone: 713-522-7400
*Trial and Appellate Counsel*

**Counsel for Appellees:**

Ben A. Baring, Jr.
R. Travis Piper
De Lange, Hudspeth, McConnell
 & Tibbets, LLP
1177 West Loop South, Suite 1700
Houston, TX 77027
Telephone: 713-871-2000
*Appellate Counsel*

J. Mark Brewer
A. Blaire Hickman
Brewer & Pritchard, P.C.
770 S. Post Oak Lane, Ste. 620
Houston, TX 77056
Telephone: 713-209-2910
*Trial Counsel for Brewer & Pritchard, P.C.*

Kenneth A. Zimmern
8588 Katy Freeway, Ste. 226
Houston, TX 77024
Telephone: 713-529-4999
*Trial Counsel for J. Mark Brewer*

Sean Ryan Buckley
Sean Buckley & Associates, P.L.L.C.
770 S. Post Oak Ln., Ste. 620
Houston, TX 77056
Telephone: 713-380-1220
*Trial Counsel for A. Blaire Hickman*

Tony L. Draper
Walker, Wilcox, Matousek, LLP
1001 McKinney, Ste. 2000
Houston, TX 77002
Telephone: 713-343-6556
*Trial Counsel for Appellees*

/s/ Ben A. Baring, Jr.
*Attorney of Record for Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees respectfully state that oral argument is not needed in this case. The facts and the law in this appeal are straightforward, as set forth in the memorandum opinions of the Bankruptcy Court and in the District Court on appeal. If this Court grants appellant's request for oral argument, then appellees will also want to present oral argument.

TABLE OF CONTENTS

**Page**

Certificate of Interested Persons..............................................................i

Statement Regarding Oral Argument...................................................iii

Table of Contents .................................................................................. iv

Table of Authorities .............................................................................. vi

Jurisdictional Statement .........................................................................x

Reply to Issues Presented ..................................................................... xi

Statement of the Case........................................................................... 1

Introduction ........................................................................................... 1

Statement of Facts .................................................................................2

Summary of the Argument...................................................................... 8

Argument and Authorities ...................................................................11

    I.    The district court was correct in concluding that the bankruptcy court had jurisdiction over Rohi's claims .......................................11

        A.    The well-pleaded complaint rule does not apply here..........11

        B.    The bankruptcy court had continuing jurisdiction to interpret its November 7, 2017 order dividing the settlement proceeds .....................................................14

        C.    The bankruptcy court had jurisdiction to interpret and enforce its own orders, and Rohi's efforts to distinguish the *Travelers* case have no merit ...........................20

    II.    The district court was correct in concluding that the bankruptcy court did not abuse its discretion when it declined to abstain....................................................................24

        A.    The abstention ruling is reviewed under an abuse of discretion standard. ............................................24

        B.    The bankruptcy court was not required to mandatorily abstain ........................................................25

C.    The district court was correct in holding that the bankruptcy court correctly declined to permissively abstain from deciding this case ........................................................... 27

III.   The district court was correct in affirming the bankruptcy court's holding that Rohi's claims were barred by res judicata ............................................................................. 32

A.    The parties are identical or in privity with one another ..... 33

B.    The prior judgment was rendered by a court of competent jurisdiction ...................................................... 38

C.    There was a final judgment on the merits. ................................ 39

D.    The same cause of action is involved in both cases ............... 42

IV.   Rohi's claims could have been brought as a part of the prior proceeding. ............................................................................ 49

V.    The bankruptcy court and district court were correct in denying Rohi's leave to amend his complaint. ................................................ 53

Conclusion ............................................................................................ 56

Certificate of Service ........................................................................... 57

Certificate of Compliance ..................................................................... 58

# TABLE OF AUTHORITIES

## Cases                                                                 Page

*American Bank & Trust Co. of Opelousas v. Dent,*
    982 F.2d 917 (5th Cir. 1993) ........................................................ 24

*American Red Cross v. S.G.,*
    505 U.S. 247 (1992) .................................................................... 13

*Cluett v. Medical Protective Co.,*
    829 S.W.2d 822 (Tex. App.—Dallas 1992, writ denied) .............................. 37

*Collins v. Sidharthan (In re KSRP, Ltd.),*
    809 F.3d 263 (5th Cir. 2015) ....................................................... 12

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) .................................................................... 24

*Employers Cas. Co. v. Block,*
    744 S.W.2d 940 (Tex. 1988) .......................................................... 37

*EOP Colonnade of Dallas, L.P. v. Faulkner (In re Stonebridge Techs., Inc.),*
    430 F.3d 260 (5th Cir. 2005) ....................................................... 15

*Federated Dept. Stores, Inc. v. Moitie,*
    452 U.S. 394 (1981) ................................................................ 33, 34

*ForumTech Indus., LLC v. Magna Powertrain USA, Inc.*
    *(In re ForumTech Indus., LLC),*
    439 B.R. 352 (Bankr. Del. 2010) ..................................................... 26

*Grant v. Askanase,*
    No. H-09-3964, 2010 WL 3791264, at *1
    (S.D. Tex. Sept. 24, 2010) ........................................................... 23

*Highland Capital Management, LP v. Chesapeake Energy Corp.*
    *(In re Seven Seas Petroleum, Inc.),*
    522 F.3d 575 (5th Cir. 2008) ....................................................... 19

*Houston Baseball Partners LLC v. Comcast Corp.*
 *(In re Houston Regional Sports Network, L.P.),*
 514 B.R. 211 (Bankr. S. D. Tex. 2014) ...................................................30

*Houston Prof'l Towing Ass'n v. City of Houston,*
 812 F.3d 443 (5th Cir. 2016)........................................................ 33, 38

*Howe v. Vaughan (In re Howe),*
 913 F.2d 1138 (5th Cir. 1990). .......................................... 28, 52

*Industrial Clearinghouse, Inc. v. Mims (In re Coastal Plains, Inc.),*
 338 B.R. 703 (N. D. Tex. 2006)........................................ 45, 49

*Johnson v. PPI Technology Services, L.P.,*
 605 Fed. Appx. 336 (5th Cir. 2015)..................................... 55

*Lloyd v. Dykeswill, Ltd. (In re Dykeswill, Ltd.),*
 365 B.R. 683 (Bankr. S. D. Tex. 2007) ............................ 35

*Local Loan Co. v. Hunt,*
 292 U.S. 234 (1934)......................................................... 21

*Marre v. U. S.,*
 117 F.3d 297 (5th Cir. 1997) ......................................... 35

*Matter of Gober,*
 100 F.3d 1195 (5th Cir. 1996) ...................................... 28

*New York Life Ins. Co. v. Gillispie,*
 203 F.3d 384 (5th Cir. 2000)................................... 43, 44

*Osherow v. Ernst & young (In re Intelogic Trace, Inc.),*
 200 F.3d 382 (5th Cir. 2000)................................... passim

*Northern Texas Traction Co. v. Clark & Sweeton,*
 272 S.W. 564 (Tex. Civ. App.—Texarkana 1925, no writ)........................... 36

*Petro-Hunt, L.L.C. v. United States,*
 365 F.3d 385 (5th Cir. 2004) ...................................... 32

*Reich & Binstock, LLP v. Scates,*
    455 S.W.3d 178 (Tex. App.—Houston [14th Dist.]
    2014, pet. denied) ...................................................................................52

*Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.),*
    163 F.3d 925 (5th Cir. 1999) ...............................................................15

*Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.),*
    88 F.3d 311 (5th Cir. 1996)...................................................................54

*Spera v. Fleming, Hovenkamp & Grayson, P.C.,*
    25 S.W.3d 863 (Tex. App.—Houston [14th Dist.] 2000, no pet.)...............31

*State Farm Lloyds v. C.M.W.,*
    53 S.W.3d 877 (Tex. App.—Dallas 2001, pet. denied) ..................................37

*Stern v. Marshall,*
    564 U.S. 462 (2011).............................................................................25

*Stokes v. Dolgen Corp., Inc.,*
    367 Fed. Appx. 545 (2010) ...................................................................54

*Stripling v. Jordan Prod. Co., LLC,*
    234 F.3d 863 (5th Cir. 2000) ...............................................................54

*Test Masters Educ. Servs., Inc. v. Singh,*
    428 F.3d 559 (5th Cir. 2005).......................................... 32, 33, 42, 55

*The Cadle Co. v. James H. Moore, III (In re Moore)*
    739 F.3d 724 (5th Cir. 2014) ............................................................. 25

*Travelers Indem. Co. v. Bailey,*
    557 U.S. 137 (2009)........................................................... passim

*U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*
    301 F.3d 296 (5th Cir. 2002) ............................................................. 19

*United States v. Davenport,*
    484 F.3d 321 (5th Cir. 2007) ............................................................. 39

*Varela v. Gonzales,*
    773 F.3d 704 (5th Cir. 2014) ............................................................. 54

*Wilson v. Valley Elec. Membership Corp.,*
  8 F.3d 311 (5th Cir. 1993) ............................................................... 24

*Wood v. Wood (In re Wood),* 825 F.2d 90 (5th Cir. 1987) .......................... 15

## Statutes

11 U.S.C. § 327 ................................................................................. 47

11 U.S.C. § 330 ................................................................................. 47

11 U.S.C. § 1103 ............................................................................... 47

28 U.S.C. § 157(a) ............................................................................. 25

28 U.S.C. § 157(b) ..................................................................... 7, 15, 26

28 U.S.C. § 1291 ................................................................................. vi

28 U.S.C § 1334 ................................................................................. 13

28 U.S.C § 1334(b) ...................................................................11, 14, 25

28 U.S.C. § 1334(c)(1) ....................................................................... 27

28 U.S.C. § 1334(c)(2) ....................................................................... 25

TEX. HUM. RES. CODE § 36.001, *et seq* .................................................. 2

TEX. HUM. RES. CODE § 36.110(a) ........................................................ 2

TEX. HUM. RES. CODE § 36.110(a-1) ..................................................... 4

## Rules

TEX. DISCIPLINARY R. PROF'L CONDUCT 5.04(a),
*reprinted* TEX. GOV'T CODE ANN., TIT. 2, SUBTIT. G (Vernon's 2019) ........................... 52

## Jurisdictional Statement

The Bankruptcy Court correctly found that it had jurisdiction over appellant's claims against appellees because resolving those claims required interpreting a previous Bankruptcy Court order. This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal of a final judgment of the District Court, which affirmed the Bankruptcy Court's decision.

## Reply to Issues Presented

1.    The District Court correctly concluded that the Bankruptcy Court had subject matter jurisdiction over all of appellant's claims, including breach of contract, breach of fiduciary duty, and deceptive trade practices, and correctly affirmed the Bankruptcy Court's denial of Rohi's motion to remand.

2.    The District Court correctly affirmed the Bankruptcy Court's dismissal of Rohi's claims against appellees.

3.    The District Court did not abuse its discretion in affirming the Bankruptcy Court's denial of appellant's motion for leave to amend his complaint.

## STATEMENT OF THE CASE

### Introduction

This case is a textbook example of the well-known aphorism, "no good deed goes unpunished." Appellees succeeded in obtaining a judgment proving over 5,000 instances of Medicaid fraud totaling nearly $40 million on behalf of their client—Rohi—against his former employer. Unfortunately, the success was short-lived because the judgment forced the defendant into bankruptcy. But appellees persisted on Rohi's behalf and ultimately the parties reached a settlement with the debtor, and the bankruptcy court allocated the settlement amount between the parties—the State of Texas, Rohi, and the appellees. The court allocated to Rohi the maximum amount that he was entitled to receive under the Medicaid statute, and awarded appellees the amount due to them under their contingency fee agreement, which the court reviewed and considered. Rohi was present throughout the hearing in which the court made the allocation and Rohi not only agreed to the allocation, he waived his right to appeal the court's ruling.

Rohi then signed the bankruptcy plan that incorporated the settlement allocation and he began receiving payments under the plan. But instead of thanking his attorneys for a job well done, Rohi sued them—claiming that he was entitled to a part of the attorneys' fees that the court allocated to them. The

1

bankruptcy court and the district    court rejected Rohi's brazen overreach, and this Court should affirm those decisions.

## Statement of Facts

Appellant, Dr. Saeed Rohi, hired appellees, Brewer & Pritchard, P.C., J. Mark Brewer, and A. Blaire Hickman to prosecute a breach of contract and qui tam claims based on the Texas Medicaid Fraud Prevention Act—TEX. HUM. RES. Code § 36.001, *et seq*.—against ABC Dentistry, P.A. and others in state court. ROA.60. The Act contains a qui tam provision, which allows an individual to sue on behalf of the State, and also entitles that individual to a percentage of any damages that the State recovers in the suit. *See* TEX. HUM. RES. CODE § 36.110(a). Rohi and his attorneys entered into a contingency fee contract under which Brewer & Pritchard would be "paid a fee … contingent on the recovery of money or property." ROA.340. The agreed-upon fee was 40% or 45% "of the Gross Recovery" depending on whether the case went to trial. ROA.340. The contract defined "Gross Recovery" to include "any and all sums of money, notes, or other property, real or personal, tangible or intangible, of any kind or nature, received from any party…." ROA.340.

In the Medicaid fraud suit, Rohi's attorneys obtained a    summary judgment regarding some 5,500 separate incidences of fraud by ABC,   totaling

approximately $39 million in damages. ROA.340. Shortly after the judgment was obtained against it, ABC filed a Chapter 11 bankruptcy petition, with the Medicaid fraud judgment being ABC's only significant liability. ROA.840:13-15. After ABC's bankruptcy filing, the state court Medicaid fraud suit was removed to federal court as an adversary proceeding within ABC's bankruptcy case. ROA.1819. The bankruptcy court ordered the parties involved in the state court suit to mediation, which produced an initial settlement offer from ABC of $3.5 million and called for the payments to be made in equal quarterly amounts of approximately $50,800 each. ROA.72, 184. Although the State of Texas did not participate in the mediation, its consent to the settlement was required, and the State refused to consent to the settlement because it did not agree on how the settlement proceeds should be divided. This, in turn, resulted in a hotly disputed and contentious litigation in the bankruptcy court. ROA.72.

The dispute over dividing the settlement proceeds resulted in the Bankruptcy Court ordering the parties to a second mediation, which the Court compelled the State of Texas to attend. ROA.1820. The second mediation resulted in an agreement on a settlement amount acceptable to the State and Rohi, after ABC increased its proposed settlement payment to $4 million. ROA.1820. The settlement was material to the consummation of the plan, and

although the parties agreed to the total settlement amount, the terms of the settlement did not apportion the proceeds among the parties. ROA.1820.

Despite lengthy negotiations, the parties failed to reach an agreement on how the settlement proceeds should be allocated, and the bankruptcy court set a trial to determine the division. In briefings submitted to the bankruptcy court, Rohi proposed a division that treated the settlement as a common fund and allocated the proceeds first by deducting Rohi's and the State's individual claims in full, then deducting fees based on the contingency agreement, and finally allocating 30% of the remaining proceeds to Rohi and 70% to the State. ROA.1820. The State argued that the common fund doctrine should not apply to the settlement and that Rohi was entitled to a pro rata distribution of his qui tam claims. The State also objected to the payment of Rohi's attorneys' fees, arguing that such payment would violate Texas law, which capped Rohi's recovery at 30% of the proceeds.[1]

On November 7, 2017, the bankruptcy court held a pretrial hearing to determine the appropriate division of the settlement proceeds. ROA.1821. The hearing was attended by the attorneys for the State of Texas, Rohi (represented

---

[1] Under the Medicaid Fraud Prevention Act, a private person who brings an action is not entitled to more than 30% of the proceeds of the action. TEX. HUM. RES. CODE § 36.110(a-1).

by Charles Long, who was hired to represent Rohi in the adversary proceeding), Rohi's wife, and attorneys from Brewer & Pritchard, who had represented Rohi in the state court qui tam action. ROA.1821. After extensive briefing by Rohi and the State on the issue of how to divide the proceeds, the bankruptcy court advised the parties that he was "going to pay the attorneys fair compensation for their work done." ROA.468:8-10. The court notified the parties that although he was willing to conduct a trial, his thought was that he had a $4 million settlement fund that he was treating as a common fund and that based on his calculations, he would award $1,599,000 to the State, $720,000 to Rohi, and $1,681,000 to the attorneys to be divided among them. ROA.1821. After a 10-minute break for the parties to consider the bankruptcy court's proposal, all of the parties and their attorneys agreed to the court's allocation and, in open court, waived their right to an evidentiary hearing and to an appeal. ROA.499:4-17. The court then allocated the settlement as follows: "The $4 million will be allocated $1,599,000 to the State of Texas, $720,000 to Dr. Rohi, and $1,681,000 to the attorneys representing Dr. Rohi to be divided by the attorneys in accordance with their own agreements." ROA.1821-1822.

A short time after the bankruptcy court's order, Rohi voted for ABC's bankruptcy plan    of reorganization, which included the $4 million settlement

and the court's November 7, 2017 allocation thereof, and the plan was confirmed. ROA.1822-1823. ABC started making quarterly payments into the court's registry, and disbursements to the parties began in accordance with the court's November 7, 2017 order. ROA.1822-1823. In fact, by mid-December 2017, ABC had paid $660,377.64 into the court's registry and pursuant to the court's order those funds were disbursed, and Rohi received his portion of the proceeds. ROA.145. Rohi has continued to receive quarterly payments under the bankruptcy plan that he personally approved and in compliance with the court's November 7, 2017 order.

Despite being present and hearing the court allocate the settlement proceeds among the State of Texas, Rohi, and his attorneys, and despite confirming the plan based on that order and receiving payments in accordance with the allocation, Rohi sued his attorneys in state court on June 1, 2018, seeking a portion of the attorneys' fees that the court awarded to them from the settlement, and accusing them of theft and breach of fiduciary duty. ROA.1823. Before answering Rohi's complaint, Brewer & Pritchard moved to re-open ABC's bankruptcy case for the express purpose of removing Rohi's state-court lawsuit. ROA.1823-1824. The attorneys asserted that the bankruptcy court had jurisdiction over the causes of action in the removed action under the court's

'arising under' or 'arising in' jurisdiction under 28 U.S.C. § 157(b). ROA.1824. The bankruptcy court re-opened the bankruptcy case and Brewer & Pritchard then moved to dismiss Rohi's suit, arguing that the bankruptcy court's November 7, 2017 order allocating the settlement proceeds barred Rohi's state court suit based on res judicata. ROA.1824. Rohi filed a motion to remand and abstain, alleging that the court lacked jurisdiction to decide the dispute and that mandatory and permissive abstention applied. ROA.251.

The bankruptcy court issued its ruling in a memorandum opinion and order on February 21, 2019. ROA.10-28. The court granted Brewer & Pritchard's motion to dismiss and denied Rohi's motions for mandatory and permissive abstention.

Rohi filed an appeal to the United States District Court for the Southern District of Texas. In a 52-page opinion that analyzed all of Rohi's arguments in detail, the Honorable Sim Lake affirmed the bankruptcy court's memorandum opinion and the bankruptcy court's dismissal order. ROA.1817-1868.

This appeal followed, in which Rohi makes the same jurisdictional arguments that he has raised in the courts below.

## Summary of the Argument

The bankruptcy court correctly held that it had jurisdiction to adjudicate this dispute. No matter how Rohi attempts to characterize his claims, Rohi's pleadings demonstrate that the dispute lies in interpreting the bankruptcy court's order dividing the settlement proceeds. On one hand, Rohi contends that the bankruptcy court's order entitled him to a percentage of a total recovery of $2,401,000—consisting of his award of $720,000 and the award of $1,681,000 awarded to his attorneys—while Brewer & Pritchard (and the other appellees) assert that Rohi is only entitled to the $720,000 awarded to him by the bankruptcy court. Accordingly, the underlying dispute centered on the interpretation of the court's November 7, 2017 order, and the bankruptcy court therefore had "arising in or under" jurisdiction.

In addition, the bankruptcy court correctly exercised its discretion in declining to abstain—either mandatorily or permissively—from considering this matter. Decisions by a bankruptcy court not to abstain are reviewed for abuse of discretion, and the bankruptcy court did not abuse this discretion in denying Rohi's abstention motion. The original bankruptcy court order resolved a core proceeding because the court was enforcing its prior order, thus mandatory abstention does not apply. Permissive abstention was also not

appropriate. The bankruptcy court referenced and rejected Rohi's arguments that the abstention factors supported permissive abstention, and the district court's own review of those factors led that court to the same conclusion. Despite Rohi's strenuous efforts to establish that resolving the dispute required interpreting the contingency fee contract that he signed with Brewer & Pritchard, the dispute actually required interpreting the bankruptcy court's November 7, 2017 order dividing the settlement proceeds because the bankruptcy court applied the contingency fee contract provisions and resolved any interpretive disputes when it issued the November 7, 2017 order.

Rohi's claims in the removed proceeding were barred by res judicata because the bankruptcy court had previously decided the division of the settlement proceeds and the portion of the settlement to which Rohi was entitled. Rohi agreed to the bankruptcy court's division and agreed not to appeal the court's determination. Rohi's claim that he was entitled to a greater percentage of the settlement proceeds than the court awarded could and should have been part of the prior proceeding and because it was not, the district court decided correctly that Rohi's claim was barred. The parties to the state court suit were identical to the parties involved in the bankruptcy dispute, the November 7, 2017 order was a final judgment entered by a court of

competent jurisdiction, and the same claims were involved in both cases. Because Rohi's claims could have been raised during the November 7, 2017 proceeding, the bankruptcy court was correct in dismissing Rohi's later-filed suit, and the district court was correct in affirming that decision.

Finally, the bankruptcy court did not abuse its discretion in implicitly denying Rohi's motion to amend his pleadings. This decision is within the trial court's discretion and because the bankruptcy court was correct in dismissing Rohi's claim based on res judicata, any amendment of Rohi's claim would have been futile. An amended complaint may be denied for futility when the plaintiff seeks to add claims that are barred by res judicata. The district court correctly affirmed the bankruptcy court's ruling on this issue.

## Argument and Authorities

### I.   The district court was correct in concluding that the bankruptcy court had jurisdiction over Rohi's claims.

The bankruptcy court correctly concluded that it had "arising in" or "arising under" jurisdiction under 28 U.S.C. § 1334(b). ROA.16. The district court agreed, concluding that resolving Rohi's claims depended on interpreting the rights created in bankruptcy, specifically those rights associated with the bankruptcy court's November 7, 2017 order dividing the settlement proceeds. ROA.1834.

#### A.   The well-pleaded complaint rule does not apply here.

The bankruptcy court was correct in exercising jurisdiction over Rohi's claims because these claims challenged the bankruptcy court's November 7, 2017 order, which allocated the $4 million settlement between Rohi and his attorneys.

There is no dispute that the bankruptcy court had core jurisdiction over Rohi's qui tam action. ROA.1795 ("Dr. Rohi does not dispute that the underlying proceeding was a core proceeding."). There is also no dispute that the settlement proceeds from the qui tam action were funded by the bankruptcy estate, that distributing those settlement proceeds was material to the consummation of the plan, and that the bankruptcy court's November 7, 2017

order apportioning the settlement proceeds was incorporated into the confirmed plan, which the bankruptcy court retained jurisdiction to enforce. ROA.1834.

Because the November 7, 2017 order was entered in a core proceeding, the bankruptcy court correctly determined that it had "arising in" or "arising under" jurisdiction over the removed action. ROA.16. *See Travelers Indem. Co. v. Bailey,* 557 U.S. 137 (2009).

In response, Rohi argues that because his state court petition did not mention the bankruptcy court's order dividing the proceeds, no bankruptcy jurisdiction existed based on the well-pleaded complaint rule. Rohi's brief, pp. 12-13. These arguments have no merit. As Rohi acknowledges, the bankruptcy court concluded that it had "arising in" jurisdiction because it had continuing jurisdiction to interpret and enforce its own orders. Rohi's brief, p. 13. And in a bankruptcy context, the well-pleaded complaint rule only applies to determine "arising under" bankruptcy jurisdiction, not when determining "arising in" or "related to" jurisdiction over a case removed to the bankruptcy court. *See Collins v. Sidharthan (In re KSRP, Ltd.),* 809 F.3d 263, 268 n. 3 (5th Cir. 2015) ("As an initial matter, the well-pleaded complaint rule does not apply in determining whether a bankruptcy court has 'related to' jurisdiction over a

removed case."); *Principal Life Ins. Co. v. JPMorgan Chase Bank, N.A. (In re Brook Mays Music Company)* 363 B.R. 801, 814-16 (Bankr. N.D. Tex. 2007) ("The well-pleaded complaint rule only makes sense (or has relevance) in connection with one prong of 28 U.S.C § 1334: the 'arising under' prong.").

Limiting the well-pleaded complaint rule to determine "arising under" jurisdiction is consistent with the decisions on this issue from the United States Supreme Court. The Supreme Court has held that the well-pleaded complaint doctrine only applies with regard to federal question "arising under" jurisdiction. *See American Red Cross v. S.G.,* 505 U.S. 247, 258 (1992) ("Respondents erroneously invoke [the well-pleaded complaint] rule outside the realm of statutory 'arising under' jurisdiction....[T]he 'well-pleaded complaint' rule applies only to statutory 'arising under' cases.").

Here, the Bankruptcy court held that it had "arising in" as well as "arising under" jurisdiction. Because the well-pleaded complaint rule only applies to determine "arising under" jurisdiction (not "arising in" jurisdiction), Rohi's jurisdictional argument has no merit.

**B.    The bankruptcy court had continuing jurisdiction to interpret its November 7, 2017 order dividing the settlement proceeds.**

Rohi next argues that the bankruptcy court and the district court erred in concluding that the bankruptcy court had "arising in" jurisdiction based on the court's continuing jurisdiction to interpret and enforce its own orders. Rohi's brief, p. 14. But this complaint makes no sense and is inconsistent with Rohi's admission that the bankruptcy court had jurisdiction to interpret the "allocation" made in the November order. Rohi's brief, p. 14. The "allocation" between Rohi and the appellees is what Rohi complains about. If—as Rohi admits—the court had jurisdiction to interpret the allocation, it necessarily had jurisdiction to interpret the order in which that allocation was made.

Not only is Rohi's argument internally inconsistent, it conflicts with Rohi's own pleadings and bankruptcy jurisdictional law. 28 U.S.C § 1334(b) vests the district courts (and by extension, the bankruptcy courts) with subject-matter jurisdiction over all "civil proceedings arising under Title 11, or arising in or related to cases under Title 11." This Court has determined that § 1334(b) provides the bankruptcy courts with three distinct categories of jurisdiction over proceedings:

(1)    "arising under" the Bankruptcy Code;

(2)    "arising in" bankruptcy cases; or

(3)    "related to" a bankruptcy case.

*Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir. 1987).

The Court has also articulated the differences between each of § 1334(b)'s three jurisdictional categories: Proceedings "arise under" the bankruptcy code where they "invoke a substantive right provided by Title 11." *Id.* at 97. Proceedings "arise in" bankruptcy cases where they "could only arise in the context of a bankruptcy case." *Id.* And proceedings are "related to" bankruptcy cases where "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 93.

Matters that "arise under" or "arise in" cases under Title 11 are referred to as the court's "core jurisdiction" because they encompass matters that constitute "core proceedings" under 28 U.S.C. § 157(b). *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.),* 163 F.3d 925, 930 (5th Cir. 1999). And this Court has determined that claims that are "dependent upon the interpretation of rights created in bankruptcy" are all within the bankruptcy court's core jurisdiction. *EOP Colonnade of Dallas, L.P. v. Faulkner (In re Stonebridge Techs., Inc.),* 430 F.3d 260, 267 (5th Cir. 2005).

Rohi's pleadings conflict with his current argument that his claims do not require interpreting the November order. Both the bankruptcy court and the district court correctly concluded that Rohi's pleadings demonstrate that the dispute lies in interpreting the court's order that divided the settlement proceeds. ROA.16, 1832. In Rohi's motion to remand and abstain, Rohi claims that he accepted the court's proposed division of proceeds on the belief that the "attorney's fees paid to [Brewer & Pritchard] by and through [Rohi's] claims would be placed into the 'gross recovery' which would then be divided in accordance with the terms of the contingency fee agreement." ROA.255. Specifically, Rohi argued that Brewer & Pritchard was only entitled to $960,400 instead of the $1,681,000 awarded to them by the bankruptcy court, and that Rohi was entitled to $1,440,600, instead of the $720,000 the court's order gave him. ROA.256-257.

The district court affirmed the bankruptcy court's determination that it had "arising in" jurisdiction and cited the claims Rohi made in his state court petition:

> The qui tam case settled for an amount that, under the terms of the [contingent fee] agreement, would entitle [Appellees] to no more than $960,400 in attorney's fees. However, [Appellees] breached the Agreement and placed their interests ahead of Dr. Rohi's and took for themselves approximately $1,681,000 in attorney's fees. This amounted to more than 70% of the total settlement and  was

not only a breach of the Agreement, the fee was unconscionable and unethical as a matter of law. ROA.1831-1832.

Rohi continues this argument in his brief filed in this Court, in which he states that he is entitled to 60% of $2,401,000 (or $1,440,600) and that appellees are only entitled to 40% of this recovery—$960,400—instead of the $1,681,000 awarded by the court. Rohi's brief, p. 7.

Rohi's factual allegations show that resolving his state court claims depend on interpreting the rights created and associated with the bankruptcy court's November 7, 2017 order that divided the settlement proceeds.

The November order was entered after the parties could not agree as to how the $4 million settlement amount would be apportioned. ROA.1832. The bankruptcy court conducted a hearing to apportion the settlement proceeds and after initially proposing to divide the proceeds based on the 45% contingency fee in Rohi's contract with Brewer & Pritchard, the bankruptcy court used a 40% fee because the case had not been called to trial. ROA.1832. The bankruptcy court proposed to Rohi and the State to allocate the settlement "$1,599,000 to the State, $720[,000] for Dr. Rohi, and $1,681,000 to the attorneys." ROA.1833. After a short break, the parties consented to the proposed allocation made by the bankruptcy court and waived their rights   to

an evidentiary hearing, a written order, and appeal. ROA.1833. The bankruptcy

court then ruled orally and in Rohi's presence:

> Just to be sure then ... I'm going to repeat it....
>
> The allocation of the settlement proceeds is now orally ordered for the reasons stated on the Record to be as follows: The $4 million dollars will be allocated to $1,599,000 to the State of Texas, $720,000 to Dr. Rohi, and $1,681,000 to the attorneys representing Dr. Rohi to be divided by the attorneys in accordance with their own agreements.

ROA.500:24-25, 501:1-7. [2]

Despite his arguments to the contrary, Rohi's state court allegations that

the qui tam action settled for an amount that entitled appellees to no more than

$960,400 in attorney's fees show not only that the causes of action asserted in

the removed action are based on rights created by the bankruptcy court's

November 7, 2017 order, but also that those causes of action require

---

[2]   The bankruptcy court's determination followed the Texas Medicaid Fraud Prevention Act provision for allocating attorneys' fees when a qui tam case has been settled:

> (c) A payment to a person under this section shall be made from the proceeds of the action. A person receiving a payment under this section is also entitled to receive from the defendant ... reasonable attorney's fees and costs.... *The court's determination of expenses, fees, and costs to be awarded under this subsection shall be made only after the defendant has been found liable in the action or the claim is settled.*

TEX. HUM RES. CODE § 36.110 (emphasis added)

interpreting that order because they challenge the court's allocation of $720,000 to Rohi and $1,681,000 to his attorneys.

In response, Rohi describes the district court's conclusion that distributing the settlement proceeds was material to the bankruptcy plan as a "circular fallacy." Rohi's brief, p. 15. It is Rohi who is engaging in circular reasoning, not the district court. Rohi does not—and cannot—deny that the bankruptcy court allocated the $4 million settlement in open court, and did so in his presence and with his assent, as stated above. And Rohi cannot deny that he seeks to change the allocation awarded by the bankruptcy court—to increase the amount awarded to him, and reduce the amount awarded to Brewer & Pritchard. The district court was correct in holding that the bankruptcy court retained jurisdiction to enforce the November 7, 2017 order, which was incorporated into the bankruptcy plan. *Highland Capital Management, LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.),* 522 F.3d 575, 589 (5th Cir. 2008) (quoting *U.S. Brass Corp. v. Travelers Insurance Group, Inc. (In re U.S. Brass Corp.)* 301 F.3d 296, 305 (5th Cir. 2002)).

C.    **The bankruptcy court had jurisdiction to interpret and enforce its own orders, and Rohi's efforts to distinguish the *Travelers* case have no merit.**

Rohi argues that his claims are not based on rights created by the November allocation order, and in support, attempts to distinguish *Travelers Indem. Co. v. Bailey,* 557 U.S. 137 (2009) relied on by the district court and the bankruptcy court as conferring jurisdiction on the bankruptcy court. The lower courts were correct in relying on *Travelers* because Rohi's causes of action required interpreting the November 2017 order that allocated the settlement and *Travelers* recognizes that a bankruptcy court has jurisdiction to interpret its own prior orders.

In *Travelers,* the Supreme Court held that a bankruptcy court has jurisdiction to interpret and enforce its own orders even though the bankruptcy case was closed and the claims would not affect the bankruptcy estate. In *Travelers,* the bankruptcy court issued an order in 1986 approving a settlement with Travelers Insurance and enjoining present and future litigation against Travelers. *Id.* at 140. Despite the bankruptcy court order, numerous plaintiffs filed state court actions against Travelers. *Id.* at 142-43. In 2002, sixteen years after the bankruptcy court issued its original order, Travelers moved the court for an injunction against the state court actions. *Id.* The bankruptcy court

granted the injunction and the plaintiffs appealed, in part, on jurisdictional grounds, contending that the bankruptcy court had no jurisdiction. The Supreme Court rejected the plaintiffs' argument, holding that the bankruptcy court "plainly had jurisdiction to interpret and enforce its own prior orders." *Id.*; *Local Loan Co. v. Hunt,* 292 U.S. 234, 239 (1934). The answer here is the same: the bankruptcy court had jurisdiction to interpret and enforce its prior order dividing the settlement proceeds.

Rohi unsuccessfully attempts to distinguish *Travelers* as it is devastating to his position. The distinctions Rohi attempts to make are not substantive and do not affect the underlying question of whether a bankruptcy court has subject-matter jurisdiction to interpret its prior orders. Rohi's only attempt to make any substantive distinction between the *Travelers* case and the present one fails. Rohi argues that "due process" is lacking here because Rohi's claims arose after the bankruptcy court's November 2017 order. Rohi's brief, p. 18. There is no due process issue here. Rohi was well aware that the issue before the bankruptcy court in November 2017 was dividing the $4 million settlement proceeds. Rohi consented to the court's division of the settlement proceeds and he received $720,000, the maximum he could receive under the Texas qui tam statute (30% of the $4 million settlement, less 40% of the amount for attorney's

fees). Rohi knew this because the bankruptcy court announced that he was dividing the settlement proceeds between the State, Rohi, and Rohi's attorneys. And this was after a year of contentious litigation on that very issue. Rohi was not denied due process and knew of the trial court's settlement division *because he was present in the courtroom* throughout the November 7, 2017 hearing and when the bankruptcy court divided the settlement proceeds:

> The allocation of the settlement proceeds is now orally ordered for the reasons stated on the Record to be as follows: the $4 million will be allocated $1,599,000 to the State of Texas, $720,000 to Dr. Rohi, and $1,681,000 to the attorneys representing Dr. Rohi to be divided by the attorneys in accordance with their own agreements.[3]

ROA.501:2-7.

Rohi and his attorneys, along with the State of Texas, agreed not to argue against the court's ruling, and waived their right to an appeal. ROA.499-500. Rohi's dispute, therefore, is with the amount he received by virtue of the bankruptcy court's order dividing the settlement proceeds, not some later dispute between Rohi and his attorneys, as Rohi now belatedly asserts.

---

3   The court likely ordered the attorneys' fees to be divided "by the attorneys representing Rohi" because, in addition to Brewer & Pritchard, Rohi was represented at the hearing by separate bankruptcy counsel. ROA.829:8-9.

This case is not like *Grant v. Askanase,* No. H-09-3964, 2010 WL 3791264, at *1 (S.D. Tex. Sept. 24, 2010) on which Rohi relies. *Grant* was not an appeal from a bankruptcy court—it was an original district court action. And the *Grant* court recognized that this distinction was important in deciding that the court had no jurisdiction. In discussing cases where courts exercise "arising in" and "arising under" jurisdiction over bankruptcy proceedings, the court recognized that "in those situations the proceedings were pending before the same court that adjudicated the primary bankruptcy case, and they involved matters that had a significant relationship to the outcome of the bankruptcy case." *Grant,* 2010 WL 3791264, at *7. That is the situation here. The order being appealed was decided by the same court that divided the settlement proceeds and the court was interpreting and enforcing its own order. Moreover, in *Grant,* the action was a separate cause of action filed by the trustee against a defendant. And this defendant was *not* a creditor in the bankruptcy case, contrary to Rohi's assertion. Finally, the court stated that "if subject-matter jurisdiction were to exist under Section 1334, it would exist not in this court *but in the bankruptcy court that adjudicated the adversary proceeding*." 2010 WL 3791264, at *8 (emphasis added).

The bankruptcy court had jurisdiction to interpret and enforce its November 7, 2017 order, and Rohi's jurisdictional issue should be overruled.

**II.   The district court was correct in concluding that the bankruptcy court did not abuse its discretion when it declined to abstain.**

### A.   The abstention ruling is reviewed under an abuse of discretion standard.

Because federal courts have a virtually unflagging obligation to exercise the jurisdiction given to them, abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976). Thus, a lower court's abstention decision is given deference, and is reviewed under an abuse of discretion standard. *Wilson v. Valley Elec. Membership Corp.,* 8 F.3d 311, 313 (5th Cir. 1993). Even if all of the preconditions for abstention are present, it is held that the decision on whether or not to abstain is still left to the discretion of the lower court. *American Bank & Trust Co. of Opelousas v. Dent,* 982 F.2d 917, 922 (5th Cir. 1993). On the other hand, the discretion to abstain is quite narrow and must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved. *Wilson,* 8 F.3d at 313.

**B.    The bankruptcy court was not required to mandatorily abstain.**

As argued above, and as the district court and bankruptcy court both recognized, bankruptcy courts are authorized to hear cases arising in, arising under, or related to Title 11. 28 U.S.C. §§ 157(a), 1334(b); *Stern v. Marshall,* 564 U.S. 462, 473 (2011).

Although the bankruptcy courts have jurisdiction to hear those cases, Title 11 provides that under certain limited circumstances, a bankruptcy court must abstain from exercising this jurisdiction:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

This Court has interpreted § 1334(c) to require mandatory abstention only if: (1) the claim has no independent basis for federal jurisdiction other than § 1334(b); (2) the claim is a non-core proceeding, (3) an action has been commenced in state court; and (4) the action could have been adjudicated timely in a state court. *The Cadle Co. v. James H. Moore, III (In re Moore),* 739 F.3d

724, 728-29 (5th Cir. 2014). In other words, mandatory abstention does not apply if the proceeding is a core proceeding. And Rohi has acknowledged that the bankruptcy court had core jurisdiction over Rohi's underlying qui tam action, which was removed to the bankruptcy court. ROA. 1795. ("Dr. Rohi does not dispute that the underlying proceeding was a core proceeding."). The district court and the bankruptcy court correctly held that interpreting the November 7, 2017 order was a core proceeding because when an order resolves a core proceeding, the interpretation and enforcement of that order is also a core proceeding. *Travelers,* 557 U.S. at 151; *FormTech Indus., LLC v. Magna Powertrain USA, Inc. (In re FormTech Indus., LLC),* 439 B.R. 352, 357 (Bankr. Del. 2010). Here, the bankruptcy court's November 7, 2017 order resolved the qui tam action against the debtor and divided the $4 million in settlement proceeds received from the debtor's bankruptcy estate. ROA.17.

As is shown above, this decision was in a core proceeding because it was a matter concerning the administration of the bankruptcy estate, involved a confirmation of a plan, and involved a proceeding affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(A), (L), and (O). Moreover, the decision to dismiss Rohi's claims involved interpreting rights created in bankruptcy—the order dividing

the settlement proceeds—and therefore is within the bankruptcy court's core jurisdiction for this additional reason. *In re Stonebridge Tech., Inc.,* <u>430 F.3d at 267</u>.

The bankruptcy court allocated the $4 million settlement proceeds in its November 7, 2017 order: allocating $1,599,000 to the State of Texas, $720,000 to Rohi, and $1,681,000 to the attorneys representing Rohi "to be divided by the attorneys in accordance with their own agreements." <u>ROA.142</u>:4-7. And Rohi cannot dispute that the $4 million settlement funded the debtor's bankruptcy plan, with the debtor paying the $4 million in quarterly payments through the end of 2022. <u>ROA.132</u>:19-22.

Rohi's challenge to the bankruptcy court's allocation involves matters that concern the administration of the estate and rights created in bankruptcy and therefore the court had jurisdiction of the core proceeding and properly refused to abstain.

### C.    The district court was correct in holding that the bankruptcy court correctly declined to permissively abstain from deciding this case.

This Court has held that a bankruptcy court has discretion to abstain from deciding either core or non-core proceedings under <u>28 U.S.C. § 1334(c)(1)</u>, "in the interest of justice, or in the interest comity with State courts or respect for

State law." *Wood*, 825 F.2d at 93. (recognizing that 28 U.S.C. § 1334(c)(1) provides bankruptcy courts "broad power to abstain whenever appropriate"). As the decision to abstain or not abstain is committed to the discretion of the bankruptcy court, the appellate court will affirm unless the court clearly abused its discretion. *Matter of Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996); *Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1143 n.6 (5th Cir. 1990).

Rohi claims that the bankruptcy court erred because it appeared that the court only considered one factor in determining whether to permissibly abstain and did not consider the other applicable factors. Rohi's brief, p. 25. As the district court correctly held, Rohi is mistaken. The bankruptcy court did not abuse its discretion because the court referenced and rejected Rohi's arguments that the permissive abstention factors supported his motion. As noted by the district court, the bankruptcy court referred to Rohi's claim that the equities of Rohi's suit weighed in favor of permissive abstention. ROA.18. The bankruptcy court even referred to the pages of Rohi's motion to remand and abstain where Rohi discussed these factors. ROA.18, 270-274.

The district court also reviewed the factors and reached the same conclusion as that reached by the bankruptcy court. The district court concluded that Rohi's claim to a greater percentage of the settlement proceeds

had a negative effect on the efficient administration of the bankruptcy estate (factor 1); bankruptcy issues, not state law issues predominated because Rohi's claim to a greater percentage of the settlement proceeds is based on rights created by the bankruptcy court's November 7, 2017 order (factor 2); the nature of the applicable law is bankruptcy law, not state law (factor 3); Rohi's claims constituted a challenge to the bankruptcy court's November 7, 2017 order allocating the proceeds from the settlement of the qui tam action (factor 6); resolving Rohi's claims involved interpreting the bankruptcy court's November 7, 2017 order, which constituted a core proceeding (factor 7); there are no state law claims to sever because Rohi's claims involved a core bankruptcy matter (factor 8); there was no indication that the case burdened the bankruptcy court (factor 9); the case involved forum shopping by Rohi, who brought his claims in state court instead of the bankruptcy court without ever mentioning the bankruptcy court's allocation (factor 10); and there was no issue of comity as there are no state law issues to resolve (factor 13). ROA.1843-1845.

Because resolving the claims that Rohi asserted in state court required interpreting the bankruptcy court's November 7, 2017 order, the district court and bankruptcy court correctly concluded that the factors of convenience  and

comity weighed heavily in favor of keeping the case in the federal court and that the bankruptcy court did not abuse its discretion by denying Rohi's motion for permissive abstention.

In addition, contrary to Rohi's claim, there is no requirement that a court analyze these factors in any particular format. Rohi complains that the bankruptcy court considered only one of the fourteen factors, but it was not necessary for the bankruptcy court to outline separately his consideration of the factors. In fact, the "factors" that a court may consider in determining whether to permissively abstain are not dispositive and must be viewed to arrive at the equitable application of the permissive abstention doctrine, as appropriately applied in the bankruptcy context. *Houston Baseball Partners LLC v. Comcast Corp. (In re Houston Regional Sports Network, L.P.),* 514 B.R. 211, 217 (Bankr. S. D. Tex. 2014). The bankruptcy court—and the district court—did just that in this case. Both courts determined that permissive abstention was not proper because the heart of the dispute involved interpreting the court's November 7, 2017 order.

Rohi asserts that he is not challenging the court's allocation, but instead claims that he is challenging "the actions and ethical standards of his attorneys for inducing him to agree to the allocation." Rohi's brief, p. 28. Rohi provides no

support for his claim that his attorneys induced him to agree to the allocation. Instead, Rohi cites his original petition in state court as support for this outlandish statement. ROA.59-64. The unvarnished truth is that both Rohi and his wife were present at the November 7, 2017 hearing where the court made the allocation, and Rohi was represented by bankruptcy counsel. ROA.465-467. And the bankruptcy court reviewed and applied the contingency fee contract at the hearing. All the parties—including Rohi—consented to the court's allocation of the settlement proceeds and waived their right to an evidentiary hearing, written order, and appeal. ROA.498-500. There is no evidence that any of Rohi's attorneys induced him to agree to the allocation. In fact, after the parties and their attorneys agreed to the allocation, Rohi voted for and signed the debtor's bankruptcy plan and the agreements that implemented it. ROA.1588:4-13. This undisputed evidence distinguishes our facts from *Spera v. Fleming, Hovenkamp & Grayson, P.C.,* 25 S.W.3d 863 (Tex. App.—Houston [14th Dist.] 2000, no pet.), which Rohi cites as support for his argument that he is not seeking to set aside the 2017 order but instead is attacking conduct extrinsic to the judgment. Rohi's brief, p. 28. *Spera* is inapplicable because the plaintiffs there were not parties to the hearing where the fairness of the attorney's fees were determined by the court, those parties had not agreed to the order in open

court, and they did not sign documents and accept the benefits of the order that they were attacking.

The bankruptcy court correctly declined to permissively abstain from this case.

## III. The district court was correct in affirming the bankruptcy court's holding that Rohi's claims were barred by res judicata.

Rohi's claims that he is entitled to a different amount from the settlement proceeds awarded to him by the November 7, 2017 order are barred under the res judicata doctrine, and the bankruptcy court and the district court were correct in so holding.

The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion. *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir. 2005). Claim preclusion or res judicata bars litigation of claims that either have been litigated or should have been raised in the earlier suit. *Id.*, *Petro-Hunt, L.L.C. v. United States,* 365 F.3d 385, 395 (5th Cir. 2004). The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and   (4)

the same claim or cause of action was involved in both actions. *Houston Prof'l Towing Ass'n v. City of Houston,* 812 F.3d 443, 447 (5th Cir. 2016).

Public policy and judicial economy favor applying res judicata to bar further litigation because of the onerous burden placed on the court and the parties in constantly re-litigating matters. *Test Masters,* 428 F.3d at 574. The United States Supreme Court has endorsed this concept, holding that it is well established that "public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 401 (1981). Thus, it is held that the res judicata doctrine is not a mere matter of practice or procedure; "it is a rule of fundamental and substantial justice, of public policy and private peace, which should be cordially regarded and enforced by the courts." *Id.* Both the district court and the bankruptcy court considered each of the four res judicata factors and correctly concluded that Rohi's suit was barred.

### A.    The parties are identical or in privity with one another.

The district court and the bankruptcy court correctly held that the first element of res judicata—that the parties to the prior suit must be identical or in privity with one another—was met in this case. The lower courts were

correct because privity existed between Brewer & Pritchard and Rohi, as these parties had entered into a contingency fee agreement. In addition, Brewer & Pritchard and Rohi shared an identity of interest in apportioning the settlement proceeds because of this contingency fee agreement and the assignment clause in the agreement, which directly assigned to Brewer & Pritchard an interest in any recovery.

Rohi argues that the district court erred in concluding that because Rohi and Brewer & Pritchard were "directly interested in the apportionment of the settlement proceeds" based on the contingency fee agreement the first res judicata element was satisfied. ROA.1850-1851. Rohi argues that having a contractual relationship is not enough to show privity for res judicata purposes. Rohi's brief, p. 35. But Rohi's argument that contractual relationships are not enough to show privity for purposes of res judicata, even if true, has no bearing on the district court's holding. The court did not base its ruling on a mere contractual relationship. Instead, the court noted that the contingency fee agreement between Rohi and Brewer & Pritchard had an assignment clause that granted the attorneys rights to the proceeds of a settlement:

> Client hereby grants to J. Mark Brewer an express interest in and to all Client's claims arising out of the above-referenced claims and any recovery received thereon.... Client does hereby authorize counsel to receive the proceeds of any settlement or payment of

any judgment, to retain that portion of the recovery which represents fees…. It is understood and agreed that conveyance of such interest is a present assignment of an interest in the claim.

ROA.1850.

Under Texas law, and as recognized by the bankruptcy court, contingency fee agreements between attorneys and clients are construed as granting property rights. *Marre v. U. S.,* 117 F.3d 297, 307 (5th Cir. 1997). Thus, the assignment clause in the contingency fee agreement granted Rohi's attorneys with an interest in the outcome of the qui tam suit and when the case settled, the attorneys were entitled to 40% of the recovery. The bankruptcy judge had the contingency fee agreement before him when he divided the settlement proceeds and he considered it—along with the qui tam statute—in making the division. ROA.23, 481-488.

Thus, Brewer & Pritchard obtained a vested property right in the settlement and bankruptcy estate property when the bankruptcy court issued its November 7, 2017 order allocating the settlement proceeds, satisfying this element of res judicata. *See Lloyd v. Dykeswill, Ltd. (In re Dykeswill, Ltd.),* 365 B.R. 683, 688 (Bankr. S. D. Tex. 2007).

*Dykeswill* recognizes that an assignment of an interest is one of vested ownership, where the client gives up control over the portion assigned to  the

attorney. *Dykeswill,* 365 B.R. at 688. And under Texas law—which controls the fee agreement—after his assignment, Rohi had no legal or equitable interest remaining in the portion assigned to Brewer & Pritchard. *Northern Texas Traction Co. v. Clark & Sweeton,* 272 S.W. 564, 568 (Tex. Civ. App.—Texarkana 1925, no writ).

Contrary to Rohi's argument, the vested interest that Brewer & Pritchard had in the settlement proceeds *was* the issue that the bankruptcy court decided. And although Rohi argues that the attorneys were not parties to the underlying suit because they did not represent their own interest, Rohi had bankruptcy counsel present at the hearing. ROA.466:8-9, 829:4-9. And Rohi must acknowledge that there was only one fund from which all parties—including Rohi and his attorneys—could be paid: the $4 million settlement that the attorneys had obtained for Rohi. Knowing that the settlement proceeds were the only source of payment, Rohi agreed to the bankruptcy court's division of those proceeds and agreed not to appeal the court's determination. Were Rohi dissatisfied with amounts separately awarded to him and to his attorneys (to be divided among those attorneys) he had an obligation to say so at the time. He did not, and the identity-of-the-parties-element of res judicata was satisfied.

Although Rohi argues that there was no privity between him and Brewer & Pritchard because a conflict existed, the cases he cites in support of this position do not apply here. These cases stand for the unremarkable proposition that under Texas law, when an insurer and its insured take conflicting positions on whether there is coverage under an insurance policy, they are not in privity. *See, e.g., Employers Cas. Co. v. Block,* 744 S.W.2d 940, 943 (Tex. 1988); *State Farm Lloyds v. C.M.W.,* 53 S.W.3d 877, 886 (Tex. App.—Dallas 2001, pet. denied); *Cluett v. Medical Protective Co.,* 829 S.W.2d 822, 829 (Tex. App.—Dallas 1992, writ denied). In those cases, because the insurers had contested whether coverage existed, the courts held that they were not bound by either the settlements agreed to by the insureds, or by a jury verdict that imposed damages on the insured.

Here, there was no such conflict. Rohi was a party to the proceeding and fully participated in it, while represented by counsel. Not only was Rohi present and a participant in the hearing apportioning the settlement proceeds, he agreed in open court to the allocation, signed the documents confirming the bankruptcy plan, and received payments under the plan based on the allocation made by the bankruptcy court.

### B.     The prior judgment was rendered by a court of competent jurisdiction.

The second element of res judicata requires that the prior judgment be entered by a court of competent jurisdiction. *Houston Prof'l Towing Ass'n,* 812 F.3d at 447. As argued above, because the focus of the dispute lies in interpreting the bankruptcy court's November 7, 2017 order, the bankruptcy court had jurisdiction to decide this case.

As the district court acknowledged, Rohi has never asserted that the bankruptcy court did not have jurisdiction over the underlying qui tam action, and that when the parties could not agree on how to divide the settlement proceeds from this action they agreed to have the bankruptcy court decide how to divide the proceeds. ROA.1851. Therefore, the November 7, 2017 bankruptcy court order dividing the settlement proceeds was a prior judgment rendered by a court of competent jurisdiction. And where a court has jurisdiction to resolve a proceeding, the court issuing the initial order has jurisdiction to interpret and enforce the court's previous order. *Travelers Indem. Co.,* 557 U.S. at 151 (holding that bankruptcy court had subject matter jurisdiction to issue a clarifying order interpreting a prior order). Because this is true, Rohi resorts to arguing that the November 7, 2017 order cannot be a prior judgment because Rohi's claims did not arise until after that time. Rohi's brief, p. 40. But Rohi's

claims only existed because he wanted to change the bankruptcy court's division of the proceeds so that he received more money. Stated another way, Rohi's dispute was with the bankruptcy court's November 7, 2017 order allocating the settlement proceeds, which is why the bankruptcy judge determined that he had jurisdiction over his previous order, and why the district court affirmed this position. The second element of res judicata is therefore satisfied.

### C.     There was a final judgment on the merits.

Res judicata precludes a cause of action if the first action resulted in a final judgment on the merits. *United States v. Davenport,* 484 F.3d 321, 326 (5th Cir. 2007). Here, the bankruptcy court issued the November 7, 2017 order dividing the settlement proceeds, and afterwards, Rohi voted for and signed a ABC Dentistry's plan of reorganization, the plan was confirmed, and ABC started to make quarterly payments into the registry of the court, and disbursements to the parties began in accordance with the bankruptcy court's November 7, 2017 order. ROA.1822-1823. Rohi did not appeal from the November 7, 2017 order or from the confirmation of ABC Dentistry's plan, *and in fact, Rohi agreed on the record not to do so*. ROA.499:7-8. Thus,   the

bankruptcy court and the district court were correct in holding that a final judgment on the merits in the prior action had occurred.

Rohi argues that the November 7, 2017 judgment resolved a dispute between Rohi and the State of Texas, not Rohi and his lawyers. Rohi's brief,  p. 42. But as the district court correctly stated, this argument does not impact whether there was a final judgment on the merits. Even if it did, the argument has no merit. The November 7, 2017 judgment resolved the allocation of the settlement funds and the order allocated the funds separately to the State, Rohi, and Rohi's attorneys. ROA.501:2-7. When discussing his allocation, the bankruptcy court specified several times that the amount awarded to attorneys were to be allocated to the attorneys to be divided in accordance with their own private agreements. ROA.499:22-501:1-7. In other words, the final, unappealed, November 7, 2017 judgment resolved the issue at hand: the amount of the settlement proceeds going to Rohi, and the amount of the settlement proceeds going to his attorneys to be divided among them.

Rohi also claims that he had no reason to contest the November 7, 2017 order because there was no dispute between Rohi and Brewer & Pritchard, citing an email from Mark Brewer to Rohi, which states that Rohi, under one settlement proposal made by the State, would receive "a gross recovery of

$3,150,000 payable in the next 5+ years." ROA.1459. This actually supports appellees' position, not Rohi's. The contingent fee agreement between the attorneys and Rohi states that if the attorneys are successful, they will receive as a fee "a percentage of the Gross Recovery (as that term is defined below)." ROA.1452. "Gross Recovery" is defined in the contingency agreement as the sum of any and all money, notes, or other property of any kind or nature received from any party. ROA.1452. Informing Rohi that his gross recovery would be the amount of the settlement is what the fee agreement says and what was ultimately awarded by the bankruptcy court. It is not evidence that the November 7, 2017 order only resolved a dispute between the State and Brewer & Pritchard, not between Rohi and Brewer & Pritchard.

Rohi next complains that he was unaware of any conflict or adversity between him and his attorney at the time of the November 7, 2017 hearing. Again, Rohi does not explain how this argument affects this element of res judicata—that there must be a final judgment on the merits. In any event, whether or not the record reflects a dispute between Rohi and his attorneys, a final judgment was entered that awarded Rohi's attorneys a sum certain, which order Rohi agreed to and did not appeal. And because there was no conflict between Rohi and his attorneys, there is no support for Rohi's speculation that

if the attorneys were ever acting in their own interest, they had a duty to disclose the conflict to Rohi. Rohi's brief, p. 43. In fact, the "conflict" that Rohi now asserts is based on some supposed secret side agreement between him and his attorneys that was not disclosed to the bankruptcy court. Of course, no such agreement existed, and Rohi provides no support for his claims that Rohi consented to the court's allocation under "false pretenses" or that Brewer & Pritchard changed the terms of any agreement or reneged on any promises concerning the fee allocation. Rohi's brief, pp. 43-44. If—as Rohi now claims—such an agreement existed (it did not), he would have been under an obligation to disclose that to the bankruptcy court or there would have been a fraud on the court.

Thus, by making this argument Rohi seeks to be rewarded for his attempt to commit fraud.

### D. The same cause of action is involved in both cases.

Res judicata also requires that the same claim or cause of action be involved in both actions. *Test Masters,* 428 F.3d at 572; *Osherow v. Ernst & Young (In re Intelogic Trace, Inc.),* 200 F.3d 382, 386 (5th Cir. 2000). This Court uses the "transactional test" to determine whether both suits involve the same cause of action. *Test Masters,* 428 F.3d at 571. Under the transactional test, a prior

judgment's preclusive effect extends to all or any part of the transaction, or series of connected transactions, out of which the original action arose. *Id.* The Court holds that what grouping of facts constitutes a "transaction" or a "series of transactions" must be determined pragmatically, giving weight to considerations such as whether the facts are related in time, space, origin, or motivation, whether they form a conventional trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. *Id.* If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred. *Id.; New York Life Ins. Co. v. Gillispie,* 203 F.3d 384, 387 (5th Cir. 2000). The critical issue is whether the two actions are based on the same "nucleus of operative facts." *Id.*

Rohi's suit against Brewer & Pritchard involves the same nucleus of operative facts that was before the bankruptcy court: the amount of attorneys' fees to be paid from the settlement proceeds. In fact, the amount of attorneys' fees was the only issue before the bankruptcy court. Rohi cannot dispute that the bankruptcy court allocated $1,681,000 "to the attorneys representing Dr. Rohi." ROA.501:2-7. And Rohi's pleading filed against Brewer & Pritchard argues that the $1,681,000 in attorney's fees were actually a part of Rohi's

award and not an award by the court to his attorneys. ROA.95. Rohi claims his

attorneys "took for themselves approximately $1,681,000 in attorney's fees."

ROA.95. This is the amount of attorney's fees awarded by the court on

November 7, 2017 in the presence of Rohi and with his consent. The only way

Rohi could have won the new suit was to convince the bankruptcy court that

the November 7, 2017 order allocating the settlement was in error. Res judicata

therefore bars Rohi's suit. *New York Life Ins. Co.,* 203 F.3d at 387.

The district court and the bankruptcy court were correct in relying on

*Osherow v. Ernst & Young (In re Intelogic Trace, Inc.),* 200 F.3d 382 (5th Cir.

2000) in deciding this issue. In *Intelogic,* a debtor retained an accounting firm

to prepare SEC disclosures and assist with an IRS examination. *Id.* at 384. After

the debtor's reorganization plan was confirmed, issues arose with the debtor's

financial health. *Id.* Although the debtor believed that its financial problems

were attributable to the accounting firm's actions, it failed to raise those issues

before the bankruptcy court in order preserve its newly-confirmed plan. *Id.*

The bankruptcy court approved the majority of the accounting firm's requested

fees at an application hearing and the debtor did not object. *Id.* at 385. After the

Chapter 11 plan failed and the case was converted a Chapter 7 liquidation, the

Chapter 7 trustee sued the accounting firm for malpractice. The bankruptcy

court dismissed that suit because it was held that the confirmed fee application precluded the later litigation under res judicata. *Id.* at 385-86.

The issue on appeal in *Intelogic* was whether the two causes of action—the accounting firm's fees and the firm's claimed malpractice—arose from a common nucleus of operative facts. *Id.* at 386. The trustee argued that the two causes of action differed because the fee application was a factual inquiry, based on whether the accounting firm provided services for the hours it billed and whether the rates charges were reasonable. *Id.* The trustee's suit, on the other hand, addressed whether the accounting firm failed to perform its professional duties. *Id.* at 387. This Court rejected this argument, holding that the fee application hearing "implied a finding of quality and value in [the accounting firm's] services" and that the trustee's subsequent malpractice claims challenged both the sufficiency and value of the accounting firm's services. *Id.* As a result, the Court held that both claims arose from the same common nucleus of operative facts. *Id.* at 388.

A similar result was reached in *Industrial Clearinghouse, Inc. v. Mims (In re Coastal Plains, Inc.)* 338 B.R. 703 (N. D. Tex. 2006). In *Coastal Plains,* after giving an opportunity for objections to a trustee's fees and a proposed distribution of assets, the bankruptcy court ordered those fees and assets to be

distributed. *Id.* at 707. The court then closed the bankruptcy case. *Id.* The court did not receive any objections "to either the fee order or the closing order, and both orders became final." *Id.* at 708. A lawsuit was then filed against the trustee in Texas state court for breach of fiduciary duty and negligence. *Id.* The bankruptcy court dismissed the case, determining that the lawsuit was barred by res judicata*. Id.*

These cases apply here. The award of attorneys' fees from the qui tam action settled by Brewer & Pritchard was *the* disputed issue in the debtor's bankruptcy case. ROA.23. This dispute led to the court's November 7, 2017 hearing and its order that allocated the settlement proceeds between the State, Rohi, and the attorneys. As above noted, the court examined the fee agreement between Rohi and his attorneys and adjusted the contingency rate downward to 40% because the hotly contested allocation dispute between Rohi and the State was settled at the November 7, 2017 pretrial hearing rather than tried. ROA.487.

Rohi's current suit challenges the same nucleus of operative facts—the allocation of the settlement proceeds between the State, Rohi, and his attorneys.

Rohi attempts to distinguish the *Intelogic* case relied on by the lower courts, arguing that there was no fee application or hearing on the reasonableness of the attorneys' fees awarded. Rohi's brief, pp. 46-47. This is a classic distinction without a difference. In *Intelogic,* the Court noted that there was a fee application hearing at which there was an implied finding of the value of the accounting firm services that prohibited a later malpractice claim that challenged the sufficiency and value of the services the accounting firm provided. *Intelogic,* 200 F.3d at 387. But the critical issue was not the *type* of hearing, but that the claims raised in the subsequent suit arose from the same common nucleus of operative facts as did the previous suit. *Id.* at 388.

Here, there was no fee application hearing because 11 U.S.C. § 330 only requires such a hearing on fee applications filed by the trustee, professionals employed the trustee, or professionals employed by committees. *See* 11 U.S.C. §§ 327, 330 and 1103. As noted by the bankruptcy court, Brewer & Pritchard were Rohi's attorneys in the qui tam suit against the debtor and were not employed by the Trustee or as committee professionals. Thus, the fee agreement between Rohi and his attorneys is not governed by § 330.

Despite Rohi's assertions, there is no evidence that there was any agreement between Rohi and the appellees involving attorneys' fees other than

the contingency fee agreement. Rohi's only support for this claim is a citation to his own pleading, not to any fact asserted or proved in the bankruptcy court. Rohi's brief, p. 46. Instead, Rohi was aware that the bankruptcy court was considering the attorneys' fee allocation at the November 7, 2017 hearing and Rohi failed to object—and in fact agreed—to the allocation of the settlement proceeds. The bankruptcy court would have conducted an evidentiary hearing had one been requested, but all parties waived their right to an evidentiary hearing and to an appeal.

Rohi argues that he could not have brought a claim against the attorneys while the bankruptcy case was still open because the claims did not arise until after the settlement allocation. Rohi's brief, p. 47. But this Court does not require a party to have understood the legal implications of the facts giving rise to a claim in order for the claim to be barred by res judicata. In *Intelogic,* the Court held that res judicata only required a "sufficient general awareness of the real potential for claims" and barred the company's claims against its accounting firm even though "the Board may not have been aware of the precise facts or reached a firm conclusion on Ernst & Young's performance." *Intelogic,* 200 F.3d at 389. Rohi knew or should have known during or after the November 7, 2017 hearing that he had been allocated $720,000 from the settlement

proceeds and that his attorneys' allocation was $1,681,000. The bankruptcy court even repeated its ruling to make sure everyone understood it:

> Just to be sure then ... I'm going to repeat it. Hopefully it's exactly what I said before.
>
> The allocation of the settlement proceeds is now orally ordered for the reason stated on the Record to be as follows: the $4,000,000 will be allocated $1,599,000 to the State of Texas, $720,000 to Dr. Rohi, and $1,681,000 to the attorneys representing Dr. Rohi to be divided by the attorneys in accordance with their own agreements.

ROA.500:24-25-501:1-7.

In any event, the briefing by the parties, the extensive discussions regarding attorneys' fees, and the court's review and analysis of the contingency fee agreement during the November 7, 2017 hearing notified all involved that an award of attorneys' fees was the only thing at issue and that the bankruptcy court was dividing the settlement proceeds between Rohi, the State, and Rohi's attorneys. The final element of res judicata was therefore satisfied.

## IV.    Rohi's claims could have been brought as a part of the prior proceeding.

Once the four elements required for the application of res judicata have been satisfied, the question is whether the claims *could* or *should* have been brought as a part of the prior proceedings. *In re Coastal Plains, Inc.,* 338 B.R.

703, 714 (N.D. Dallas, 2006). To determine whether the claims could or should have been brought, a court must decide whether: (1) Rohi had "actual or imputed awareness" at the time of the fee determination "of a real potential for claims" of the same type currently being asserted; and (2) the bankruptcy court possessed procedural mechanisms through which Rohi could have pursued his claims. *Id.* Here, any concerns that Rohi had about how the bankruptcy court divided the $4 million settlement proceeds could and should have been brought by him as an objection to the court's stated division.

This Court has held that important factors in considering whether a claim could or should have been brought are: (1) whether the hearing was an adversary proceeding or contested matter, (2) the connection between the order awarding the fees and the claims now being asserted, and (3) the amount of time that has elapsed since the case commenced. *Intelogic,* 200 F.3d at 388. None of these factors is a litmus test for the application of res judicata and the critical question is whether the party "could or should have asserted the claim in the earlier proceeding." *Id.* Here, the district court and the bankruptcy court correctly held that Rohi was sufficiently aware of the fact that the attorneys' fees to be awarded to his attorneys was in dispute and was being considered and awarded at the November 7, 2017 hearing.

First, Rohi was aware that his award and the award to his attorneys were being made separately by the bankruptcy court. Throughout the November 7, 2017 hearing, the court referred to the award to Rohi and to his attorneys as separate awards. ROA.477:11-14, 479:23-25, 480:1-2, 486:3-11, 499:22-25, 500:1-2, 501:2-7. This is consistent with the brief filed on Rohi's behalf, suggesting that the settlement proceeds be separated between the State, Rohi, and his attorneys. ROA.1327. In sum, Rohi knew full well at the time the bankruptcy court allocated the settlement proceeds that his award and his attorneys' awards were separate. That is why Rohi signed the agreement to confirm the bankruptcy plan based on the settlement allocation, and why he began receiving payments in accordance with that plan.

Now Rohi claims that he was assured in written and oral communications that Brewer & Pritchard would share a part of the amount allocated to them with Rohi. Rohi's brief, p. 50. Nonsense. There is no evidence that this was the case, and as above indicated, if Rohi had an understanding or some secret, undisclosed agreement with his attorneys, he never notified the court of this fact. That is because there was no such agreement. In fact, any such agreement would be prohibited by the Texas State Bar Rules of Professional Conduct, which prohibit a lawyer from sharing legal fees with a non-lawyer. And an

agreement for improper fee splitting between a lawyer and a non-lawyer is unenforceable as against public policy. *Reich & Binstock, LLP v. Scates,* 455 S.W.3d 178, 181 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). *See* Tex. Disciplinary R. Prof'l Conduct 5.04(a), *reprinted* Tex. Gov't Code Ann., tit. 2, Subtit. G (Vernon's 2019).

Similarly, Rohi complains that he could not have brought his claim against his attorneys because he did not know the factual basis for his claim until his attorneys breached the unwritten and undisclosed agreement after the fee allocation hearing. Rohi's brief, p. 50. To support his claim, Rohi criticizes the district court's reliance on *Howe v. Vaughan (In re Howe),* 913 F.2d 1138 (5th Cir. 1990), which holds that a party does not have to understand the legal implication of the facts giving rise to a claim in order for the claim to be barred by res judicata*. Id.* at 1147. Rohi claims that he didn't know the factual basis for the claim until after the November 7, 2017 hearing. But he did. He knew the important facts that he now disputes: the bankruptcy court allocated separate amounts from the settlement to him and to his attorneys. And because he knew these facts, it was unnecessary for Rohi to understand the legal implications that bar his later claim that he is entitled to a portion of the attorneys' fees.

Finally, Rohi argues that his claims could never have been brought in the bankruptcy court proceedings because they were unknown and Rohi did not know they existed and that res judicata was not applicable. Rohi's brief, p. 51. But, as above noted, this Court has held that to determine whether claims could or should have been brought, it is enough that appellant had "actual or imputed awareness" at the time of the fee determination "of a real potential for claims of the same type currently being asserted" and that "the bankruptcy court possessed procedural mechanisms" through which a party could have pursued his claims. *In Re Intelogic,* 200 F. 3d at 388. Here, any concerns Rohi had about the amounts allocated to his attorneys should have been brought to the court's attention. Rohi knew that the bankruptcy court was considering the fee application at the November 7, 2017 hearing yet he failed to object to the allocation of the settlement proceeds awarded to appellees.

Rohi's claims could and should have been brought in the earlier proceeding.

## V.    The bankruptcy court and district court were correct in denying Rohi's leave to amend his complaint.

Rohi's final complaint is that the bankruptcy court erred when it denied him leave to amend his complaint. Rohi's brief, pp. 55-57. It should be noted that at the hearing on the motion to dismiss, Rohi made no argument that he

should be allowed to amend his pleadings. ROA.465-502. But if a motion for leave to amend was before the court, the entry of the court's order dismissing Rohi's claims would be considered an implicit denial of his motion for leave to amend. *Stokes v. Dolgen Corp., Inc.,* 367 Fed. Appx. 545, 559 (2010).

A decision whether to grant leave to amend pleadings is within the discretion of the trial court. In deciding whether to grant such leave, a court may consider factors such as undue prejudice to the opposing party and futility of amendment. *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.),* 88 F.3d 311, 314-15 (5th Cir. 1996). A court does not abuse its discretion in denying leave to amend a pleading when the amendment would be futile—for instance, when the amended claim would not survive a motion to dismiss. *Varela v. Gonzales,* 773 F.3d 704, 707 (5th Cir. 2014)(*per curiam*). *See also*, *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 872 (5th Cir. 2000) (Interpreting "futility" in this context to mean that the amended complaint would fail to state a claim upon which relief could be granted). Because the bankruptcy court was correct in dismissing Rohi's claim based on res judicata, this deficiency cannot be cured by amending his petition.

Rohi's complaint against Brewer & Pritchard was dismissed because   of the preclusive effect  of the November 7, 2017 order. This preclusive effect

extended to all rights of Rohi with respect to "all or any part of the transaction, or series of connected transactions, out of which the original action arose." In other words, the issues in both cases were based on the same nucleus of operative facts. *See Test Masters,* 428 F.3d at 572.

Rohi's request to amend his petition to assert other claims "for fraud and to amend his current claims to clarify the alleged conduct" will necessarily involve the same nucleus of operative facts as the complaint that was already considered by the bankruptcy court. Rohi claims that he sought leave to allege that appellees made material representations to him about how the gross recovery (including any attorneys' fee award) would be split to induce him to consent to the settlement at the November 7, 2017 hearing. This shows that the conduct about which he is complaining occurred before—and not after—the settlement allocation, as Rohi now asserts. ROA.332-333.

Moreover, Rohi does not explain why the claims that he now wants to add were not originally added to the complaint filed below. One of the factors in considering a court's discretion is whether the amendment will cause undue delay or appears to be dilatory. *Johnson v. PPI Technology Services, L.P.,* 605 Fed. Appx. 336, 333 (5th Cir. 2015).

Rohi was aware of all of the facts that he now asserts he wants to add to his previously filed complaint, and the bankruptcy court did not err in failing to grant the motion for leave to amend.

## Conclusion

For all of these reasons, appellees J. Mark Brewer, A. Blaire Hickman, and Brewer & Pritchard, PC respectfully request that the Court affirm the decision of the district court, which affirmed the bankruptcy court's decision.

Respectfully submitted,

DE LANGE, HUDSPETH, MCCONNELL
& TIBBETS, L.L.P.

By: /s/ Ben A. Baring, Jr.
       BEN A. BARING, JR.
       State Bar No. 01739050
       Federal ID No. 1541
       bbaring@dhmtlaw.com
       R. TRAVIS PIPER
       tpiper@dhmtlaw.com
       1177 West Loop South, Suite 1700
       Houston, TX 77027
       Phone: 713-871-2000
       Fax: 713-871-2020

ATTORNEYS FOR APPELLEES

## Certificate of Service

I hereby certify that on March 27, 2020, a true and correct copy of the brief of appellees was served by the CM/ECF system which will send a notice of electronic filing to all parties requesting and entitled to receive ECF notice, including:

Kevin Dubose
kdubose@adjtlaw.com
Alexander Dubose & Jefferson LLP
1844 Harvard St.
Houston, TX 77008
*Appellate Counsel*

Lance Christopher Kassab
lance@kassab.law
David Eric Kassab
david@kassab.law
The Kassab Law Firm
1214 Elgin St.
Houston, TX 77004
*Trial and Appellate Counsel*

 /s/ Ben A. Baring, Jr.
BEN A. BARING, JR.

## Certificate of Compliance

This document complies with the type-volume limit of <u>Fed. R. App. P. 32(a)(7)(B)</u> because, excluding the parts of the document exempted by <u>Fed. R. App. P. 32(f)</u>, this document contains 12,138 words.

This document complies with the typeface requirements of <u>Fed. R. App. P. 32(a)(5)</u> and the type-style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Calisto MT Pro font, except for footnotes which are in 12-point Calisto MT Pro font.

Dated: March 27, 2020.

/s/ Ben A. Baring, Jr.
BEN A. BARING, JR.